Vacated and remanded with instructions by published opinion. Judge GREGORY wrote the majority opinion, in which Judge KEENAN joined. Judge AGEE wrote a dissenting opinion.
OPINION
GREGORY, Circuit Judge:
This case is about the “centuries-old principle of respect for the privacy of the home.” Wilson v. Layne, 526 U.S. 603, 610, 119 S.Ct. 1692, 143 L.Ed.2d 818 (1999). Defendant, Torrance G. Hill, filed a motion to suppress evidence obtained in his residence without a warrant. The district court denied the motion, and determined that the police acted legally when they entered Hill’s home. Hill subsequently entered a conditional guilty plea while reserving his right to appeal the denial of his motion to suppress. We now hold that the district court erred in finding that the police’s initial entry into the house was valid, but that it properly found Ms. Alvarez’s consent for the second search was valid. We remand to the district court for a determination as to whether the taint from the initial illegal entry into *261 the house was dissipated by Ms. Alvarez’s consent.
I.
The pertinent facts of this case take place over the span of a month and a half. On June 25, 2009, Hill was informed by Virginia State Trooper Cox that his license was suspended. When asked, Hill gave the officer an address in Alexandria, Virginia. Hill testified that he told Trooper Cox that the address was out of date because he could not remember his new mailing address in Lorton, Virginia (hereinafter “the Lorton townhouse”) where he had moved with his girlfriend, Ms. Alvarez, and their eight-year-old son in May of 2009.
On July 12, 2009, Officer Albert from the Fairfax Police Department approached a group of men, including Hill, who were allegedly loitering, and obtained their identification. Later, after the men had dispersed, Officer Albert discovered an electronic scale and concealed marijuana near where the group of men were gathered. Early the next morning, he swore out an affidavit to obtain an arrest warrant for Hill. The warrant for Hill’s arrest listed his address as “unknown.”
On July 17, 2009, Ms. Alvarez called 911 from the Lorton townhouse because of an argument she was having with Hill. Ms. Alvarez testified at the suppression hearing that she hung up the phone before speaking with the 911 operator, but Officer Coligan was dispatched to the Lorton townhouse nonetheless. Ms. Alvarez also testified that the argument did not involve physical violence. Officer Coligan testified that when he arrived Ms. Alvarez told him that Hill resided at the Lorton townhouse, but had left because- of the outstanding warrant for his arrest. Officer Coligan also testified that the door frame of the house was damaged when he arrived, and he discussed having it fixed by the landlord with Ms. Alvarez. He forwarded his report to Sergeant Milam from the warrant department.
Hill spent more than half of his nights at the Lorton townhouse between the July 17th incident and July 29th, 2009, but this was not known to police at the time.
On July 29, 2009, Sergeant Milam, Detective Studer, Officers Pleva, and Officer Kroll from the Fairfax Police Department arrived at the Lorton townhouse with a warrant for Hill’s arrest. The warrant indicated that Hill’s address was unknown. Sergeant Milam testified that he thought there was an eighty percent chance that Hill would not return to the Lorton townhouse to avoid being apprehended by police. Instead, Sergeant Milam reported, the police were trying to communicate with Ms. Alvarez concerning Hill’s whereabouts.
Upon arrival, the police knocked on the door. They heard noises which they believed could have been voices or the television. The noises were completely unresponsive to police knocking. Milam noted that the doorframe was damaged. He placed a call to Ms. Alvarez who indicated that she was at work and that the only person who could be at the Lorton townhouse was her sister. Neither the police nor Ms. Alvarez expressed concern about Ms. Alvarez’s sister’s safety, and, notably, Milam did not obtain consent to enter the house during this conversation. Shortly thereafter, Milam decided to turn the doorknob and opened the door. Upon opening the door, Milam discovered Hill and a friend sitting on the couch. They confiscated Hill’s phone, which had a text message from Ms. Alvarez indicating that the police were at the front door.
Officer Pleva conducted a protective search of the home allegedly looking for Ms. Alvarez’s sister. Pleva also testified *262 he smelt burnt marijuana. The officers located a small amount of marijuana and a grinder on the kitchen table. About an hour later, upon arriving home from work, Ms. Alvarez gave her consent to search the house. There is a factual dispute about whether Ms. Alvarez freely gave her consent to search the house. Despite her allegedly valid consent, police took steps to obtain a search warrant. However, the search of the Lorton townhouse was conducted by the time the search warrant was executed by Officer Kroll. The search turned up a two-shot revolver, an empty holster, a bulletproof vest, scales, ammunition, marijuana, and crack cocaine.
Hill was charged in a superseding indictment with one count of possession with intent to distribute cocaine base in violation of 21 U.S.C. § 841(a) and one count of possession of a firearm in connection with a drug trafficking crime in violation of 18 U.S.C. § 924(c).
Before trial, Hill filed a motion to suppress evidence obtained as a result of the search of the Lorton townhouse. The court denied the motion first orally and later in a written order.
Hill entered a conditional plea of guilty to the first count while retaining his right to appeal the denial of his motion to suppress. The district court entered a judgment of conviction and sentenced him to 120 months of incarceration. Hill timely appealed.
II.
On appeal from a motion to suppress, this Court reviews the factual findings of a district court for clear error, and reviews legal determinations de novo. United States v. Kellam, 568 F.3d 125, 132 (4th Cir.2009).
This case requires an analysis of four doctrines in order to determine whether or not the fruits of the search of Hill’s home should be suppressed. First, we determine whether the search of Hill’s residence was justified as a valid execution of Hill’s arrest warrant. Second, we determine whether the exigency doctrine permits entry into the house. Third, we determine whether Ms. Alvarez’s consent to search the house was valid. Finally, we determine whether the taint from the initial entry was dissipated by Ms. Alvarez’s consent.
A.
i.
The police did not have sufficient reasons upon which to base their belief that Hill was present in the home to execute their arrest warrant. In Payton v. New York, the Supreme Court concluded that police may enter into a home without a search warrant in order to execute an arrest warrant only if “there is reason to believe [that the subject of the warrant] is within.” 445 U.S. 573, 602, 100 S.Ct. 1371, 63 L.Ed.2d 639 (1980). Generally, circuits have broken the analysis of whether the entry was lawful into two conjunctive parts: (1) whether there is reason to believe that the location is the defendant’s residence, and (2) whether or not there was a “reasonable belief’ that he would be home. See, e.g., United States v. Graham, 553 F.3d 6, 13 (1st Cir.2009); United States v. Magluta, 44 F.3d 1530, 1535 (11th Cir.1995), cert. denied, 516 U.S. 869, 116 S.Ct. 189, 133 L.Ed.2d 126 (1995).
Circuits have employed a variety of approaches in defining reasonable belief and its relationship to probable cause. Some circuits have found that reasonable belief is the same as probable cause. See United States v. Hardin, 539 F.3d 404, 416 (6th Cir.2008) (probable cause is the correct standard to use in determining an officer’s *263 reasonable belief that the subject of a warrant is present in the home); United States v. Gorman, 314 F.3d 1105, 1114 (9th Cir.2002) (same); see also United States v. Jackson, 576 F.3d 465, 469 (7th Cir.2009) (noting an inclination to believe “that ‘reasonable belief is synonymous with probable cause.”).
Other circuits have simply found that the distinction between reasonable belief and probable cause is indefinite or negligible. See United States v. Barrera, 464 F.3d 496, 501 n. 5 (5th Cir.2006) (noting that the distinction between probable cause and reasonable belief is “more about semantics than substance”), cert. denied, 550 U.S. 937, 127 S.Ct. 2247, 167 L.Ed.2d 1096 (2007); Magluta, 44 F.3d at 1535 (noting that it is “difficult to define the Payton ‘reason to believe’ standard, or to compare the quantum of proof the standard requires with the proof that probable cause requires.”).
While still other circuits have found that the requirements of reasonable belief are something less than probable cause. See United States v. Thomas, 429 F.3d 282, 286 (D.C.Cir.2005) (“reasonable belief’ requires less than probable cause), cert. denied, 549 U.S. 1055, 127 S.Ct. 660, 166 L.Ed.2d 519 (2006); Valdez v. McPheters, 172 F.3d 1220, 1227 n. 5 (10th Cir.1999) (same); United States v. Lauter, 57 F.3d 212, 215 (2d Cir.1995) (same). A final set of circuits has taken no position as to the relationship between “reasonable belief’ and probable cause. United States v. Weems, 322 F.3d 18, 22 (1st Cir.2003); United States v. Risse, 83 F.3d 212, 216 (8th Cir.1996); United States v. Edmonds, 52 F.3d 1236, 1248 (3d Cir.1995), vacated in part on other grounds, 52 F.3d 1251.
In light of the diverse views taken by our sister circuits, we decline to reach a conclusion as to whether ‘reason to believe’ is as stringent as ‘probable cause’ because we conclude below that the police entry was not justified even under the less stringent interpretation of the standard.
ii.
Next we apply the two-part test to determine whether police could lawfully enter Hill’s home to execute their arrest warrant. First, we must decide whether police had reason to believe that the Lorton townhouse was Hill’s residence. At the suppression hearing, Hill essentially conceded this point because in order to have standing to contest the search he had to establish that he had an expectation of privacy at the residence. Additionally, the report stemming from Ms. Alvarez’s domestic violence call stated that the Lorton townhouse was his residence. Therefore, we find that there was reason to believe that Hill was a resident of the Lorton townhouse.
The second part of the test is whether or not the police had reason to believe that Hill was present; and we conclude that the evidence weighs against so finding. First, there is testimony from Sergeant Milam, the lead officer on the scene, that he did not believe Hill would be present at the home since he had previously been identified at the home by police and fled. Milam even stated that he believed there was an eighty-percent chance Hill would not be present.[1] In fact, Officer Kroll, another *264 arresting officer, characterized the trip to the residence as a “follow up visit to the residence to gain information in regards to a fugitive investigation that [Sergeant Mi-lam] was conducting.” J.A. 171. Additionally, the police had documented another primary residence for Hill based on this recent traffic citation, further lessening the chances that Hill would be present in the home.
The officers relied on hearing unresponsive noises from inside the house, which could have been voices or a television, to support their belief that Hill was present. However, noise coming from inside of a house is not enough to give the police a reason to believe that a defendant is present. This is especially true because before entering the house, Sergeant Milam was informed by a resident of the house, Ms. Alvarez, that Hill was not there and that the noise was most likely coming from her sister who might have been in the house.
In the Fourth Circuit, courts have sanctioned entry .only where multiple facts support a reason to believe that the subject of the arrest warrant is present at the time of entry. See, e.g., United States v. Young, 609 F.3d 348 (4th Cir.2010) (finding that where police established surveillance of the home, were sure that the subject of the arrest warrant was present, and had just confiscated drugs from someone exiting the home, Payton supported entry into the home); United States v. Morgan, No. 92-5068, 1992 WL 203950, at *1, 1992 U.S.App. LEXIS 20235, at *2 (4th Cir. Aug. 24, 1992) (unpublished) (the police “observed that the interior lights were on and that Morgan’s car was parked at the rear of the house” and “saw Morgan run across the yard toward his house.”).
The government also relies on several cases from outside the Fourth Circuit to conclude that they had sufficient evidence that Hill was present in the home to justify their entry. For instance, it relies on United States v. Lloyd for the proposition that noise inside a house is sufficient to give police a reason to believe someone is inside. 396 F.3d 948 (8th Cir.2005). However, in that case, police had a complaint from neighbors about an abandoned car, the smell of ether emanating from the house, noise from a fan and other sources coming from inside the house, as well as evidence from a neighbor that the defendant had been home earlier that day. Id. at 950-952. These robust facts point to a far more sound conclusion that someone, specifically the defendant, was present at the time of the entry.[2]
Similarly, the government’s reliance on United States v. Route is misplaced. 104 F.3d 59 (5th Cir.1997). In Route the police had more facts to rely on in determining that they had a reasonable belief that the defendant would be present. These facts included that the home was defendant’s primary residence, a known co-eonspirator was seen leaving the house shortly before the search, there was a television on inside the house, and an additional car was parked in the driveway. Id. at 62.[3]
In all of these cases, the police had several reasons to believe that the subject of the warrant was present. Here, at best, the police had reason to believe that someone was present and that the individual inside was Ms. Alvarez’s sister. We find that in order to have reason to believe that *265 the defendant is in the home, police cannot solely rely on an unidentified noise coming from within the home.
Therefore, we conclude that the officers’ entry into Hill’s home was not a proper entry in order to execute an arrest warrant.
B.
The government also contends that its entry was justified by the exigency doctrine. The district court, in determining that the exigency doctrine would apply, provides scant reasoning except to say that “the Court finds that it would have been reasonable for [the police] to enter or certainly simply open the door to determine whether the sister was facing some safety issues.” J.A. 268. We disagree and hold that the evidence does not support a finding that the entry was justified by the exigency doctrine.
In analyzing whether exigent circumstances justified a warrantless search, we ask whether the circumstances would cause an officer to have an “objectively reasonable belief that an emergency existed that required immediate entry to render assistance or prevent harm to persons or property within.” United States v. Moss, 963 F.2d 673, 678 (4th Cir.1992). The Supreme Court has emphasized that “[a]n action is ‘reasonable’ under the Fourth Amendment, regardless of the individual officer’s state of mind, as long as the circumstances, viewed objectively, justify the action.” Brigham City v. Stuart, 547 U.S. 398, 404, 126 S.Ct. 1943, 164 L.Ed.2d 650 (2006) (citation and quotations omitted). Examples of such emergencies include “to assist persons who are seriously injured or threatened with such injury.” Id. at 403, 126 S.Ct. 1943.
This Court recently cited with approval a non-exhaustive list of factors to consider:
(1) the degree of urgency involved and the amount of time necessary to obtain a warrant; (2) the officers’ reasonable belief that the contraband is about to be removed or destroyed; (3) the possibility of danger to police guarding the site; (4) information indicating the possessors of the contraband are aware that police are on their trail; and (5) the ready destructibility of the contraband.
United States v. Mowatt, 513 F.3d 395, 399 (4th Cir.2008) (citation omitted). In the present case, only the first factor is alleged by the government, and we proceed with an analysis of whether there was sufficient evidence of urgency to justify police entry.
The Supreme Court has found that where officers were called to a house, observed underage drinking, and an altercation, the exigency doctrine was correctly applied. See Brigham, 547 U.S. at 407, 126 S.Ct. 1943. For this doctrine to justify an entry, courts require police to have substantial evidence of wrongdoing or imminent danger. See United States v. Taylor, 624 F.3d 626 (4th Cir.2010) (police sought to identify the parents of a four year old child, and she identified the house as being her residence); United States v. Dean, No. 06-5028, 243 Fed.Appx. 780, 782 (4th Cir. July 17, 2007) (unpublished) (police had reports of a gas leak in a wood framed house); United States v. Jones, 204 F.3d 541, 543 (4th Cir.2000) (where defendant placed a small baggy with white powder in his mouth and walked into a residence); United States v. Masko, No. 99-4681, 2000 WL 1124525, 2000 U.S.App. LEXIS 19057 (4th Cir. Aug. 9, 2000) (unpublished) (where an occupant of a motel room asked the staff to call 911); cf. Hunsberger v. Wood, 570 F.3d 546, 549 (4th Cir.2009) (in a civil case against a police officer, the court determined that “circumstances confronted by defendant on the night in question suggested that plain *266 tiffs’ home was being vandalized and that a missing teenage girl was in the house and in need of assistance” and therefore he acted properly).
Where the police have evidence that the danger in question was not imminent, an entry is not justified. United States v. Shea, No. 99-4723, 2000 WL 870492, 2000 U.S.App. LEXIS 15441 (4th Cir. June 30, 2000) (unpublished) (police received a call that defendant was engaged in underage sex and found defendant outside the room, and therefore, had no reason to believe that underage girl was in danger and subsequent search was illegal).
Here, the police did not have a sufficiently reasonable basis to justify this entry under the exigency doctrine. The factors Sergeant Milam identified to support his contention that his emergency entry was justified are not sufficient. First, Mi-lam suggests that “the door appeared to be very old, and [he] noticed around the frame and the top area to be some damage to the frame a little bit like it had been previously kicked in or broken in.” J.A. 140 (emphasis added). However, slight damage to a door frame is not sufficient to justify an entry without a warrant.[4]
Second, Sergeant Milam expressed concern that there was someone inside the house who was not answering and “that’s not normal behavior.” J.A. 141. Again, this is simply not sufficient evidence to support a warrantless entry into a private home without some articulable fact that justified urgent entry by police. This is especially true since the unresponsive noise could easily have been a television or radio accidentally left on.
Next, Milam indicated that he was concerned about Ms. Alvarez’s sister who he was told might be home, but was not answering the door. However, Milam can point to nothing that would suggest that Ms. Alvarez’s sister was in distress or required police assistance.
Milam also expressed concern about Ms. Alvarez because she had previously called the police to remove Hill. However, any concern about Ms. Alvarez and Hill should have been eliminated when Milam spoke with Ms. Alvarez who was at work and who had assured him that she was fine and suggested her sister would be the only one in the house. Additionally, the 911 call that Ms. Alvarez placed was weeks before the search and no allegations of violence were made against Hill.
Finally, Milam indicated that he heard what sounded like someone attempting to lock a latch on the door. However, the door was not locked when police entered. Furthermore, this evidence does not point to any exigency. Circuit precedent supports a finding that entry was not justified. In Moss, a Forest Service Officer noticed a car parked illegally along the side of the road in a national park. Moss, 963 F.2d at 674. He radioed to dispatch and was wrongly told that the closest cabin was unoccupied. Id. at 675. When he came upon the cabin, he discovered fresh bike tracks and an unlocked door. Id. He proceeded to search the cabin and discovered marijuana. Id. This Court concluded that his search of the cabin was not justified under the exigency doctrine because there was no evidence of “an emergency that required immediate identification of the *267 occupants in order to give them assistance — or indeed that assistance was needed.” Id. at 679.
This case is very much like Moss in several respects. In both cases, the officer was under some mistaken impressions, which led to his suspicion. In Moss it was that the cabin was not occupied, and, in this case, that the damage on the door was recent.[5] Similarly to Moss, and unlike cases where the exigency doctrine has been applied, there were no reports of yelling from within the home that would support a sense of emergency or signals of distress.
The Fourth Amendment protects the rights of citizens to refuse to have their homes searched. In order for a search to be legal, the police must have a warrant or their conduct must fall within an exception to the Fourth Amendment. We hold that damage to the door, unsupported hunches of the police, and noises from within are not sufficient to suggest that there was an emergency taking place inside the residence.
Therefore, we find that the initial entry into the Lorton townhouse was unlawful.
C.
Having concluded that the initial entry into the house was unlawful, we turn our analysis to the issue of whether the consent provided by Ms. Alvarez was valid. “The voluntariness of consent to search is a factual question, and as a reviewing court, we must affirm the determination of the district court unless its finding is clearly erroneous.” United States v. Lattimore, 87 F.3d 647, 650 (4th Cir.1996). District courts are given deference where their determination on the issue of consent is based on oral testimony where they had an opportunity to make a credibility determination. Id. at 651.
The district court concluded, after weighing the evidence presented to it by Ms. Alvarez and the police, that Ms. Alvarez’s consent to the search of her home when she arrived after Hill’s arrest was voluntary. The district court credited the officer’s testimony over that of Ms. Alvarez. We can find nothing on the record which would support a finding that the district court committed clear error in determining that the consent was valid.
D.
We have determined that the initial entry into the Lorton townhouse was illegal, but that Ms. Alvarez gave her valid consent to the search. Therefore, it becomes necessary to evaluate whether the taint from the initial illegal search was dissipated when Ms. Alvarez gave her consent for the second search.[6]
This Court must evaluate whether the taint is sufficiently dissipated using the “fruit of the poisonous tree” doctrine. Wong Sun v. United States, 371 U.S. 471, 83 S.Ct. 407, 9 L.Ed.2d 441 (1963). In Brown v. Illinois, the Supreme Court articulated three factors that are used to determine whether the taint from an illegal search has dissipated: (1) the time between the Fourth Amendment violation and the consent, (2) the presence of intervening circumstances, and (3) the flagran *268 cy of the official misconduct. 422 U.S. 590, 603-04, 95 S.Ct. 2254, 45 L.Ed.2d 416 (1975). In evaluating whether the taint has dissipated, courts conduct a case by case analysis of the facts. United States v. Ceccolini, 435 U.S. 268, 276, 98 S.Ct. 1054, 55 L.Ed.2d 268 (1978).
If the government wishes to argue that taint from an initial search is dissipated by the validly obtained consent, it bears the burden of so showing. United States v. Seidman, 156 F.3d 542, 548 (4th Cir. 1998).
We have previously found that an individual’s consent can be sufficient to dissipate the taint of an illegal search. See Seidman, 156 F.3d at 548 (taint had dissipated from an informant’s illegal entry into subject’s house when he was warmly greeted by subject who explained not answering the door because he was in the basement and carried on a 45 minute conversation with informant); see also United States v. Meece, 580 F.3d 616, 619 (7th Cir.2009) (a girlfriend’s consent was sufficient to dissipate taint where the court found she was not influenced by news of arrest and wanted police to find any guns in her home to protect her children). But in other cases, we have found that consent does not dissipate the taint. In United States v. Gooding, we found that an illegal Terry stop tainted all subsequently obtained evidence even when the defendant consented to the search. 695 F.2d 78, 84 (4th Cir.1982). Other courts have also found that consent does not necessarily dissipate the taint. In United States v. Alvarez-Manzo, the Second Circuit found that consent to search a wallet subsequent to a Fourth Amendment violation where police seized defendant’s bag from the bus cargo did not dissipate the taint. 570 F.3d 1070, 1077 (8th Cir.2009). The court relied on the fact that the government bears the burden of showing that the taint has dissipated. Id.; see also United States v. Valentine, 539 F.3d 88 (2d Cir.2008) (man’s arrest and search of car were illegal, the police proceeded to his apartment and, with the consent of his girlfriend, searched it, the court remanded the case to district court to determine whether the subsequent search of the apartment was lawful); United States v. Jaquez, 421 F.3d 338 (5th Cir.2005) (consent to search car given after illegal traffic stop not sufficiently an act of free will to break causal chain of events flowing from constitutional violation); United States v. Washington, 387 F.3d 1060, 1063 (9th Cir.2004) (written consent did not dissipate taint); United States v. Yousif, 308 F.3d 820 (8th Cir.2002) (consent does not always purge prior illegal action); United States v. Caro, 248 F.3d 1240 (10th Cir.2001) (same); United States v. Valdez, 931 F.2d 1448 (11th Cir.1991) (same).[7]
In a similar case, the Eleventh Circuit has taken a more limited view of the taint doctrine. In United States v. Delancy, the Eleventh Circuit found that the written and oral consent from a girlfriend was sufficient to dissipate the taint of the illegal entry by police. 502 F.3d 1297, 1309 (11th Cir.2007). The case before us is factually different in two ways: (1) the police obtained written consent in Delaney, and (2) the girlfriend in Delaney did not arrive home to multiple police officers already in her home after learning of the arrest of her boyfriend.
*269 The first factor that the Supreme Court identified in Brown requires us to consider the time that elapsed between the initial “illegal” search and the subsequent consent. There is a factual dispute between the parties as to how much time elapsed between the two searches. Since the record is underdeveloped as to this issue, this factor weighs in favor of remanding the case to the district court in order for it to conduct a further factual inquiry.
The second factor to consider is the existence and importance of any intervening circumstances. This Court and the Supreme Court have consistently held that an analysis of the voluntariness of a statement is a separate inquiry from determining whether the taint from a Fourth Amendment violation has dissipated. Cf. Taylor v. Alabama, 457 U.S. 687, 690, 102 S.Ct. 2664, 73 L.Ed.2d 314 (1982) (“[T]his Court [has] firmly established that the fact that the confession may be ‘voluntary’ for purposes of the Fifth Amendment ... is not by itself sufficient to purge the taint of the illegal arrest.”). In a concurrence, Judge Michael summarized the Supreme Court jurisprudence on this topic:
[T]he Supreme Court has found intervening circumstances only when the events were sufficient to break the “causal chain[ ] between the [Fourth Amendment violation] and the statements made subsequent thereto.” Brown, 422 U.S. at 602, 95 S.Ct. 2254. Examples of intervening circumstance sufficient to break that chain include a hearing before a magistrate judge at which the defendant was advised of his rights, see Johnson v. Louisiana, 406 U.S. 356, 365, 92 S.Ct. 1620, 32 L.Ed.2d 152 (1972); an arraignment plus a six-day release from custody, see Wong Sun, 371 U.S. at 491, 83 S.Ct. 407; and the issuance of a valid search warrant that resulted in the independent discovery of drugs and a spontaneous admission, see Rawlings v. Kentucky, 448 U.S. 98, 108-09, 100 S.Ct. 2556, 65 L.Ed.2d 633 (1980). See also United States v. Wellins, 654 F.2d 550, 555 (9th Cir.1981) (finding intervening circumstance when defendant was allowed to consult with his lawyer).
Seidman, 156 F.3d at 555.[8]
Here, the continued presence of the law enforcement officers inside the home, subsequent to their illegal search, is a significant consideration in determining whether the taint had dissipated. “[W]here government agents inform a defendant that they have entered his house and are in control thereof and that they have found contraband, there is a strong possibility that the consent is a fruit of the original illegal entry.” United States v. Collazo, 732 F.2d 1200, 1204 (4th Cir.1984); see also Thomas, 955 F.2d at 211.
Another significant consideration is the fact that the person providing consent in this case was not the defendant, but instead was the defendant’s girlfriend, Ms. Alvarez. Additionally, Ms. Alvarez was not present in the home at the time that the police entered the residence.
There is limited evidence in this record regarding the circumstances surrounding Ms. Alvarez’s consent. For example, we do not know: how many police officers were present in the house and whether *270 their weapons were visible; what freedom of movement Ms. Alvarez had during the search; and whether Ms. Alvarez might have to fear prosecution if she did not cooperate. Consequently, we find that no conclusion can be drawn on this factor, and it should be remanded for further development on this issue.
The third factor to consider in this analysis is the flagrancy of the police conduct. This analysis turns at least in part on whether the violation “is the sort of police behavior that the Brown ... test is meant to discourage.” United States v. Miller, 146 F.3d 274, 279 (5th Cir.1998). There are numerous factors to consider when evaluating the flagrancy of the conduct. Some factors may weigh in favor of finding the conduct to be flagrant including that the illegal conduct involves “the physical entry of the home[,] [which] is the chief evil against which the wording of the Fourth Amendment is directed.” Payton, 445 U.S. at 585, 100 S.Ct. 1371.
Other factors may weigh in favor of finding the conduct was not flagrant, including that the officers did not use or exploit the evidence that they obtained during the initial search to gain consent. See Seidman, 156 F.3d at 549; see also Delaney, 502 F.3d at 1313.
It will ultimately be the district court’s role to weigh the evidence alongside these factors, and evaluate the flagrancy of the police conduct.
Therefore, since the district court has not addressed this issue, it is appropriate to remand the case for a full factual development of the record and a determination of whether the taint had dissipated by the second search. Collazo, 732 F.2d at 1204.
We vacate the district court’s denial of Hill’s motion to suppress, and remand this matter to develop the record and determine whether Ms. Alvarez’s consent was sufficient to dissipate the taint from the initial illegal search of the Lorton townhouse.
Accordingly, this case is

VACATED AND REMANDED WITH INSTRUCTIONS.

. It is true that the subjective beliefs of an officer are not relevant here. Whren v. United States, 517 U.S. 806, 813-814, 116 S.Ct. 1769, 135 L.Ed.2d 89 (1996). However, Sergeant Milam’s belief was held as a result of the objective fact that Hill was unlikely to return to a residence he had recently fled in order to avoid contact with the police. As such, Mi-lam's view is evidence of a reasonable reading of the objective facts from an experienced officer’s perspective.

. The court in Lloyd also relied on the fact that the smell of ether permitted the officers to enter the home as a result of the exigent circumstances. Id. at 955.

. The government also cites United States v. Phillips, 593 F.2d 553, 556 (4th Cir. 1978), but this case has no precedential value since it was decided before Payton and thus analyzed the issue according to a different test.

. Practically speaking, if the police had concerns about the door frame they could have asked Ms. Alvarez about it while they were talking to her on the phone. Instead of taking the extreme step of entering a private home without a warrant, the police had a clearly less invasive means of ascertaining what, if anything, was transpiring within the house. Ms. Alvarez was cooperative and forthcoming from the perspective of the police having previously informed them that Hill fled as a result of an outstanding warrant.

. In fact, police had previous knowledge that the door frame had been damaged because when the police were called to the house on July 17, 2009, the damage was noted.

. In the initial briefing for this case, neither party raised this issue. However, the court ordered additional briefing with respect to this issue prior to oral argument. Since the burden to prove dissipation rests with the government, this question was not waived by Hill.

. The government's reliance on United States v. Liss is misplaced since the majority in that opinion does not even perform a Brown analysis. 103 F.3d 617 (7th Cir. 1997). Furthermore, in a concurrence, Judge Ripple characterized the majority opinion’s failure to consider Brown as "frontal assault on the precedents of the Supreme Court of the United States and this Court”. Id. at 622.

. The inevitable discovery doctrine is not appropriate here since "[t]he premise of the inevitable discovery doctrine is that the illegal search played no real part in discovery of incriminating evidence. Only then, if it can be shown that the taint did not extend to the second search, would the product of the second search be admissible.” United States v. Thomas, 955 F.2d 207, 209 (4th Cir. 1992). Here, it is obvious that the police's desire to search the Lorton townhouse stemmed from the initial illegal search.