**UNPUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

**No. 10-4995**

UNITED STATES OF AMERICA,

Plaintiff - Appellee,

v.

CHARLES ALLEN HALL,

Defendant - Appellant.

Appeal from the United States District Court for the Western
District of North Carolina, at Charlotte.  Martin K. Reidinger,
District Judge.  (3:09-cr-00019-MR-1)

Argued:  September 19, 2012        Decided:  October 15, 2012

Before TRAXLER, Chief Circuit Judge; DUNCAN and DAVIS, Circuit
Judges.

Affirmed in part, vacated in part, and remanded by unpublished
opinion.  Judge Duncan wrote the opinion, in which Chief Judge
Traxler and Judge Davis joined.

**ARGUED:** Joshua B. Carpenter, FEDERAL DEFENDERS OF WESTERN NORTH
CAROLINA, INC., Asheville, North Carolina, for Appellant.
Melissa Louise Rikard, OFFICE OF THE UNITED STATES ATTORNEY,
Charlotte, North Carolina, for Appellee.  **ON BRIEF:** Claire J.
Rauscher, Executive Director, Angela Parrott, Assistant Federal
Defender, Cecilia Oseguera, Assistant Federal Defender, FEDERAL
DEFENDERS OF WESTERN NORTH CAROLINA, INC., Charlotte, North
Carolina, Matthew Segal, FEDERAL DEFENDERS OF WESTERN NORTH
CAROLINA, INC., Asheville, North Carolina, for Appellant.  Anne

M. Tompkins, United States Attorney, Charlotte, North Carolina, for Appellee.

———————————

Unpublished opinions are not binding precedent in this circuit.

DUNCAN, Circuit Judge:

Appellant Charles Allen Hall appeals his conviction and sentence on one count of possession of a firearm by a convicted felon in violation of 18 U.S.C. § 922(g)(1) on the ground that state authorities violated his Fourth Amendment rights. He further contends that the district court erroneously admitted unduly prejudicial evidence. In the alternative, Hall requests that we vacate the district court's order requiring him to reimburse court-appointed attorneys' fees, as well as his sentence under the Armed Career Criminal Act (the "ACCA"). For the reasons that follow, we affirm Hall's conviction. However, we vacate the district court's reimbursement order and remand for resentencing as to that issue only.

I.

A.

We briefly summarize the relevant facts. On April 8, 2008, Officer Calvin Helms of the Charlotte-Mecklenburg Police Department went with three other officers to Hall's Charlotte, North Carolina residence to arrest him for a misdemeanor charge arising from the purported theft of catalytic converters. Officer Helms was aware that Hall had a lengthy criminal history, including fifteen felony convictions and one hundred arrests. Upon arriving at Hall's residence, the officers

3

recognized his vehicle in the driveway, as some of the officers had seen Hall driving the vehicle in the past. After the officers knocked and announced their presence at both the front and back doors, a man who the officers knew was not Hall, and who was later identified as Thomas Phillips, opened the back door. An officer asked Phillips whether Hall was there. Phillips mumbled something incomprehensible in response--possibly "hold on" or "no"--before shutting the door. J.A. 99. The officers continued knocking but received no further response. Officer Helms then contacted his supervisors and apprised them of the situation. In light of Hall's criminal history, the officers decided to request the assistance of a SWAT team to execute the arrest warrant.

Over the next few hours, a SWAT team deployed to Hall's residence, set up a command post, and used loudspeakers to call for Hall to come out of the house. Hall did not come out, but four other occupants emerged: Hall's wife, Sheena Hall; her two children; and Phillips. Ms. Hall told the officers that her husband was not inside. According to the officers, Phillips told them that Hall was in the house. At the later suppression hearing, Phillips disputed that he told the officers Hall was inside; however, the district court credited the officers' testimony. When Hall did not respond or emerge, SWAT team members entered the house and searched for Hall but did not find

4

him.

During the search, the officers located two firearms, including a rifle that had been placed in an air duct large enough for a person to fit inside that ran underneath the house. An officer had opened the air duct to see if Hall was hiding in it. That officer immediately "located a brown or tan rifle bag," about three feet long, six to eight inches high, and narrowed in a triangular manner on one end, laying lengthwise down the duct. J.A. 585-86. He pulled the bag out of the air duct and set it on the ground. At trial, the officer testified that he referred to it as a "rifle bag" because he owns several such bags himself. He further described it as "just a large canvas or cloth like bag that's long enough for a rifle to fit into with a strap across the top," J.A. 185, and explained that "[y]ou could feel the weight of it being heavier on one side versus the other when I lifted it out, typical of a rifle bag with a rifle inside of it. I have several at home, same exact set up," J.A. 586. Other officers later opened the bag and found a rifle.

After the initial search, one of the officers interviewed Phillips again, and reported that Phillips was adamant that Hall was inside. The SWAT team then conducted a second search, and officers located Hall in a crevice inside the attic wall. An officer later testified at trial that he saw

5

Hall and said, "Let me see your hands," whereupon Hall swore at him and spat at him and other officers.  J.A. 151-52.

B.

On February 17, 2009, Hall was charged in the Western District of North Carolina with being a felon in possession of a firearm, in violation of 18 U.S.C. § 922(g)(1).  Hall filed a motion to suppress, arguing, inter alia, that (1) officers could not enter a house to arrest the subject of a misdemeanor warrant; (2) officers did not have adequate "reason to believe" Hall was inside; (3) officers exceeded the scope of a protective sweep; and (4) the duration of the search was constitutionally unreasonable.  The magistrate judge conducted two suppression hearings, after which he recommended that Hall's motion be denied.  Hall filed written objections to that recommendation. On September 29 and October 8, 2009, the district court entered orders overruling Hall's objections, adopting the magistrate judge's recommendation, and denying the motion to suppress.  On the first day of trial, the district court heard additional testimony regarding the motion to suppress and reiterated its denial of that motion.

Hall also filed a motion in limine to preclude the use of what he deemed inadmissible propensity evidence under Federal Rule of Evidence 404(b).  Specifically, he objected to testimony

6

from officers that Hall swore and spat at them when they found and arrested him.[1] The district court ruled that such evidence was not 404(b) evidence, as it was inextricably intertwined with the events in question and was relevant and admissible. Hall again objected to the admission of this evidence at trial, and his objection was overruled.

After trial on October 19 and 20, 2009, a jury convicted Hall. On August 25, 2010, the district court sentenced Hall as an armed career criminal to 188 months imprisonment and three years of supervised release under the ACCA, 18 U.S.C. § 924(e)(1). The district court found that Hall lacked "the ability to pay a fine or interest" under 18 U.S.C. § 3572(a), but it ordered Hall to reimburse the United States for court-appointed attorneys' fees, in the form of monthly installments in the amount of $50. It made no specific findings of fact in support of the reimbursement order. The district court entered judgment against Hall on September 11, 2010. This appeal followed.

---

[1] The government also referred to Hall's conduct in this regard during its opening and closing statements.

II.

Hall makes the following arguments on appeal: that state authorities violated the Fourth Amendment by entering his residence without "reason to believe" he was inside and by searching the bag in which the rifle was found; that the district court erred in admitting evidence that Hall swore and spat at officers when they found him; that the district court violated the Criminal Justice Act, 18 U.S.C. § 3006A, by ordering Hall to repay his court-appointed attorneys' fees; and that the district court erred in sentencing him as an armed career criminal under the ACCA. We consider each contention in turn.

A.

We first address Hall's contention that police violated the Fourth Amendment by entering his home without "reason to believe" he was inside.[2] On appeal from a district court's denial of a motion to suppress, we review the court's factual findings for clear error and its legal determinations de

_____

[2] Although Hall also contends in general terms that "SWAT teams present acute Fourth Amendment concerns," Appellant's Br. at 19, he frames the argument in the context of the broader challenge to the officers' "reason to believe" he was home when they entered his residence. He cites no authority, nor have we found any, for the proposition that a SWAT team may not be used to execute a misdemeanor warrant. To the contrary, given Hall's criminal history, of which the officers were aware, the exercise of their discretion to call in a SWAT team seems appropriate.

novo.  United States v. Grossman, 400 F.3d 212, 216 (4th Cir. 2005).

"[A]n arrest warrant founded on probable cause implicitly carries with it the limited authority to enter a dwelling in which the suspect lives when there is reason to believe the suspect is within."  Payton v. New York, 445 U.S. 573, 603 (1980).  It is well established that Payton requires that officers have a reasonable belief that the arrestee (1) lives in the residence, and (2) is within the residence at the time of entry.  United States v. Hill, 649 F.3d 258, 262 (4th Cir. 2011); see also United States v. Veal, 453 F.3d 164, 167 (3d Cir. 2006); United States v. Gay, 240 F.3d 1222, 1226 (10th Cir. 2001); United States v. Lauter, 57 F.3d 212, 215 (2d Cir. 1995).  Assuming the equivalence of the probable cause and reason to believe standards,[3] the officers were required to have been aware of facts and circumstances sufficient to justify a reasonably cautious person in believing that Hall was in the home.  Vasquez v. Snow, 616 F.2d 217, 220 (5th Cir. 1980).  "To

---

[3] We note that the parties disagree about whether reasonable belief requires probable cause, or something less.  We have previously acknowledged "the diverse views taken by our sister circuits," and declined "to reach a conclusion as to whether 'reason to believe' is as stringent as 'probable cause.'"  Hill, 649 F.3d at 263.  Here, too, we decline to resolve that issue, because we hold that the officers had probable cause to enter Hall's home.

9

determine whether probable cause existed," we "look to the totality of the circumstances known to the officers at the time of the arrest." United States v. Al-Talib, 55 F.3d 923, 931 (4th Cir. 1995). And "as to the second Payton prong, courts must be sensitive to common sense factors indicating a resident's presence," including "the possibility that the resident may be aware that police are attempting to ascertain whether or not the resident is at home." United States v. Magluta, 44 F.3d 1530, 1535 (11th Cir. 1995); cf. 3 Wayne R. LaFave, Search and Seizure § 6.1 (4th ed. 2004) ("[T]he police need not possess 'special knowledge' that the defendant is at home in order to meet the probable cause test, for in the absence of facts tending to show that the defendant is not at home, it is reasonable to infer that he would be there.").

On these facts, we hold that the officers had reason to believe that Hall was inside the house at the time of entry.[4]

---

[4] Hall argues that, for purposes of determining whether officers had "reason to believe" he was inside, officers "constructively entered" the residence and arrested him when SWAT team members began using loudspeakers, but before they physically entered the home. In so arguing, Hall relies on several out-of-circuit cases involving the use of forceful SWAT methods designed to lure a potential arrestee out of his home so police could arrest him in "public" without a warrant. See, e.g., United States v. Maez, 872 F.2d 1444, 1451 (10th Cir. 1989) (finding that Payton is violated when "there is such a show of force that a defendant comes out of a home under coercion and submits to being taken in custody"). We decline to adopt the constructive entry analysis where, as here, officers
(Continued)

10

Officers knew the house was Hall's residence and possessed several pieces of information suggesting he was at home. First, officers recognized Hall's vehicle in the driveway. Second, officers knew someone was in the house and not responding to their knocks. Further, Hall's wife and two of her children ultimately emerged, as did Phillips, who reported, as credited by the district court, the fact of Hall's presence inside. Therefore, officers had "reason to believe" Hall was inside the residence at the time of entry under Payton.

## B.

Hall next contends that officers violated the Fourth Amendment by conducting a search of the bag that was ultimately found to contain a rifle. The government contends that the seizure was lawful under the plain view doctrine.

Whether the plain view exception to the warrant requirement supports an officer's search of a container is a question of law that we review de novo. United States v. Williams, 41 F.3d 192, 196 (4th Cir. 1994).[5] Officers may

---

had an arrest warrant for Hall and did not use the SWAT team to lure Hall outside to make a warrantless arrest.

[5] When a defendant fails to raise an issue before the district court with sufficient specificity, our review of the claim is for plain error only. United States v. Baptiste, 596 (Continued)

11

conduct a warrantless search of a container seized in plain view only when its contents are a "foregone conclusion." Id. at 197 (citation omitted). In Williams, we held that when a container's "distinctive configuration proclaims its contents, the container supports no reasonable expectation of privacy and the contents can be said to be in plain view." Id. (citation omitted). "In determining whether the contents of a container are a foregone conclusion, the circumstances under which an officer finds the container may add to the apparent nature of its contents." Id. For example, in Williams, we upheld a warrantless search where "compelling circumstances existed that [led] us to conclude" that "cellophane wrapped packages found in Williams' suitcase 'spoke volumes as to [their] contents--particularly to the trained eye of the officer.' For instance, from the appearance and size of the packages, . . . it was reasonable to assume" that they contained contraband. Id. at 197-98 (citation omitted). We further noted the officer's "firm belief, based on his ten years' experience, that packages appearing in this manner always contained narcotics." Id. at

---

F.3d 214, 220 (4th Cir. 2010). The government contends that we should review for plain error only because Hall did not challenge the officer's testimony that he knew the rifle bag found in the air duct contained a rifle. Because we hold that, even reviewed de novo, the warrantless search of the bag was lawful, we need not resolve this issue.

12

198.

Significantly for our analysis, the Supreme Court has specifically cited a gun case as an example of a container that may be seized under the plain view exception. Arkansas v. Sanders, 442 U.S. 753, 764-65 n.13 (1979) ("[S]ome containers (for example a kit of burglar tools or a gun case) by their very nature cannot support any reasonable expectation of privacy because their contents can be inferred from their outward appearance.") (emphasis added). Although we have not previously applied the plain view exception to a gun case, other circuits have done so. See United States v. Banks, 514 F.3d 769, 775 (8th Cir. 2008) (holding that "because gun cases vary in characteristics, [and] each case must be evaluated on its own facts," the test is whether "the container at issue is readily identifiable as a gun case by its distinctive configuration"); United States v. Meada, 408 F.3d 14, 24 (1st Cir. 2005) (upholding search of clearly labeled gun case when the case "reasonably appeared to contain a gun," and when "as a convicted felon, [the defendant] was prohibited from possessing one"); cf. United States v. Bonitz, 826 F.2d 954, 956-57 (10th Cir. 1987) (refusing to apply the exception to the search of a "hard plastic case" which "did not reveal its contents to the trial court," but withholding judgment as to "the well-known soft, zippered gun cases" because "soft-sided gun cases could

13

self-reveal the presence of a weapon inside").

Similarly, we find it plain that the soft bag found in the air duct contained a rifle for the following reasons: (1) the officer immediately recognized it as a "rifle bag" because of its specific dimensions, shape, and weight distribution; (2) the officer had prior experience with rifle bags, and had several such bags at home; and (3) the rifle bag was secreted in an air duct. We therefore hold that the search of the rifle bag was justified and a search warrant unnecessary.

C.

We next consider Hall's argument that the district court erred in admitting evidence that Hall spat and swore at police officers when they found him. "We review a district court's evidentiary rulings for abuse of discretion and subject such rulings to harmless error review." United States v. Johnson, 587 F.3d 625, 637 (4th Cir. 2009).

Under the harmless error standard, we will not reverse if we can "say, with fair assurance, after pondering all that happened without stripping the erroneous action from the whole, that the judgment was not substantially swayed by the error." Kotteakos v. United States, 328 U.S. 750, 765 (1946); see United States v. Mouzone, 687 F.3d 207, 213 (4th Cir. 2012).

14

Hall argues that evidence of his behavior at the time of arrest was both extrinsic to the ultimate 18 U.S.C. § 922(g)(1) charge and irrelevant to prove Hall's "guilty knowledge" of the firearms in his house. He contends the testimony was extremely prejudicial. Even assuming that Hall is correct and that the district court erred in admitting the evidence, we conclude that any resulting error was harmless. In this case, there was overwhelming evidence that Hall was guilty of the charged offense: the jury heard evidence of where the two guns were found and also heard phone calls in which Hall referenced owning other firearms that the police did not find. Moreover, Hall does not contend that evidence that he was hiding in the attic wall when officers found him was improperly admitted. Thus, we can say with fair assurance that the testimony that Hall swore and spat at officers when they found him, and the prosecution's references to that conduct during opening and closing statements, did not substantially sway the judgment in this case.

D.

We next address Hall's challenge to the district court's order requiring him to repay his attorneys' fees. A district court's authority to order reimbursement of attorneys'

15

fees presents a question of statutory interpretation which we normally review de novo. United States v. Weaver, 659 F.3d 353, 356 (4th Cir. 2011). Because Hall did not raise this challenge below, however, our review is for plain error. Fed. R. Crim. P. 52(b). To establish plain error, Hall must show that an error occurred, that it was plain, that it affected his substantial rights, and that this court should exercise its discretion to correct the error. United States v. Olano, 507 U.S. 725, 731-32 (1993). We have held "that an error is clear or equivalently obvious if 'the settled law of the Supreme Court or this circuit establishes that an error has occurred.'" United States v. Maxwell, 285 F.3d 336, 342 (4th Cir. 2002) (citation omitted). "Notably, the error need not be plain at the time the district court erred as long as the error is plain at the time of appellate consideration." Id. An error affects the defendant's substantial rights if it has a prejudicial effect on the sentence imposed. United States v. Lynn, 592 F.3d 572, 580 (4th Cir. 2010).

The Criminal Justice Act requires the government to provide adequate legal representation for criminal defendants unable to pay for such services when, like Hall, they are charged with a federal felony offense. 18 U.S.C. § 3006A(a)(1)(A). That statute also provides that "[i]f at any time after the appointment of counsel . . . the court finds that

16

the person is financially able to obtain counsel or to make partial payment for the representation, it may . . . authorize payment as provided in subsection (f), as the interests of justice may dictate." 18 U.S.C. § 3006A(c). Subsection (f) authorizes a court to order repayment of attorneys' fees under certain circumstances:

> Whenever . . . the court finds that funds are available for payment from or on behalf of a person furnished representation, it may authorize or direct that such funds be paid to the appointed attorney . . . or to the court for deposit in the Treasury as a reimbursement to the appropriation, current at the time of payment, to carry out the provisions of this section.

18 U.S.C. § 3006A(f).

We recently held that a district court must base a reimbursement order under § 3006A(f) "on a finding that there are specific funds, assets, or asset streams (or the fixed right to those funds, assets, or asset streams) that are (1) identified by the court and (2) available to the defendant for the repayment of the court-appointed attorneys' fees." United States v. Moore, 666 F.3d 313, 322 (4th Cir. 2012). In Moore, we vacated the reimbursement order because the district court failed to make findings that defendant Moore was "financially able . . . to make partial payment for the representation." Id. at 323 (citation omitted). The district court in Moore "simply adopted the probation officer's standing $50 a month repayment

17

plan" even though it "specifically found that Moore, who was clearly eligible for a court-appointed attorney, did 'not have the ability to pay a fine or interest.'" Id. (citation omitted).

We hold that Moore controls our disposition of Hall's challenge to the district court's reimbursement order. This case is factually similar to Moore: the district court made no findings regarding Hall's ability to pay, relied upon the probation officer's standard monthly installment plan, and specifically found that Hall did not have the ability to pay a fine or interest. As such, the district court did not comply with the statutory mandate here.[6] For those reasons, we exercise our discretion to hold that the district court's judgment at sentencing, insofar as it required a reimbursement of attorneys' fees, was in error, and that the error was plain. We vacate that portion of the district court's judgment requiring Hall to repay his court-appointed attorneys' fees, and remand for resentencing consistent with this opinion, as to that issue only.

E.

Finally, we address Hall's challenge to his

---

[6] It bears noting that the district court did not have the benefit of our decision in Moore when it entered the reimbursement order.

18

classification as an armed career criminal under the ACCA, 18 U.S.C. § 924(e)(1). "We review legal issues such as whether a defendant's previous conviction counted as an ACCA predicate de novo, and we review factual findings for clear error." United States v. Washington, 629 F.3d 403, 411 (4th Cir. 2011) (citations omitted).

Hall submitted his own, supplemental brief to contest his sentence under the ACCA. He contends he has not been convicted of three prior violent felonies, as 18 U.S.C. § 924(e)(1) requires, and therefore should not have been sentenced as an armed career criminal.

He first argues that his South Carolina third-degree burglary conviction is not a violent felony. "The Supreme Court has defined burglary as a violent felony under the ACCA only if the breaking and entering was what it terms generic burglary: 'any crime, regardless of its exact definition or label, having the basic elements of unlawful or unprivileged entry into, or remaining in, a building or structure, with intent to commit a crime.'" See United States v. Foster, 662 F.3d 291, 292 (4th Cir. 2011) (quoting Taylor v. United States, 495 U.S. 575, 599 (1990)).

Although Hall's charging document from the burglary conviction does not specify the statute under which he was charged, we nevertheless conclude that his third-degree burglary

conviction qualifies as a violent prior felony for ACCA purposes. There was no evidence of there being more than one third-degree burglary statute in South Carolina (§ 16-11-313) and the language of the indictment tracked this statute, which met the basic requirement for classifying a burglary as a qualifying violent felony for ACCA purposes: unlawful entry into a physical structure with the intent to commit a crime. See Foster, 662 F.3d at 292. Therefore, the court properly classified the burglary as a predicate ACCA felony.

Hall also contends that two of his predicate offenses are actually one crime. The ACCA requires "that the three predicate offenses take place 'on occasions different from one another.'" United States v. Letterlough, 63 F.3d 332, 335 (4th Cir. 1995) (citation omitted). In Letterlough, we laid out the factors a court should consider to determine whether the predicate offenses took place on different occasions, including "whether the offenses arose in different geographic locations; whether the nature of the offenses was substantively different; and whether the offenses involved multiple victims or multiple criminal objectives." Id. at 335-36. We have previously found that "'criminals who commit separate crimes against different individuals while on a spree, within a short period of time, provided that the perpetrator had the opportunity to cease and desist from his criminal actions at any time'" commit crimes on

different occasions. United States v. Leeson, 453 F.3d 631, 642-43 (4th Cir. 2006) (citations omitted).

The district court walked through each factor during Hall's sentencing hearing, explaining its reasoning for finding that the two felonies Hall now challenges--a charge for breaking and entering and larceny, and a charge for aiding and abetting an assault with a deadly weapon on a police officer--constituted two separate offenses, even though the aiding and abetting felony arose when Hall fled the scene of the breaking and entering. S.J.A. 1072 (pre-sentence investigation report); 1003-05. A consideration of the Letterlough factors leads us to conclude that our holding in Leeson applies here. Hall's breaking and entering and his assault on a police officer were committed in somewhat different geographic locations, the nature of the two offenses was substantially different, the victims of the crimes were distinct, and there were different criminal objectives to each crime. Further, there was a point after the breaking and entering, albeit brief, where Hall "'had the opportunity to cease and desist from his criminal actions,'" meaning the crimes occurred on different occasions. Leeson, 453 F.3d at 643 (citations omitted). Therefore, the district court did not err in classifying Hall as an armed career criminal and so sentencing him under the ACCA.

## III.

For the foregoing reasons, the judgment of the district court is

AFFIRMED IN PART,
VACATED IN PART,
AND REMANDED.