In the

# United States Court of Appeals
## For the Seventh Circuit

No. 01-3063

UNITED STATES OF AMERICA,

*Plaintiff-Appellee*,

*v.*

LEONIDES ZAMORA, JR., also known
as JOSE ZAMORA,

*Defendant-Appellant.*

Appeal from the United States District Court
for the Eastern District of Wisconsin.
No. 01 CR 26—**Charles N. Clevert**, *Judge*.

ARGUED NOVEMBER 27, 2001—DECIDED FEBRUARY 24, 2003

Before BAUER, HARLINGTON WOOD, JR., and MANION, *Circuit Judges*.

HARLINGTON WOOD, JR., *Circuit Judge*. Defendant Leonides Zamora, Jr.'s guilt in this case involving misuse of a passport is not questioned. The only issue raised by Zamora is whether the district court properly enhanced his offense level by nine levels under Section 2J1.6(b)(2)(A) of the United States Sentencing Guidelines ("U.S.S.G." or "the Guidelines"). Because we agree with the district court's finding that § 2J1.6(b)(2)(A) applies, Zamora's sentence is affirmed.

Zamora was indicted in February 2001 on two counts stemming from charges that he helped Yogesh Shah, his

former brother-in-law, flee from this country while Shah was awaiting sentencing on multiple fraud convictions in another case pending in the Eastern District of Wisconsin.[1] Shah was also indicted in the present case, but did not appear.[2]

The fugitive, Shah, was a real estate developer in the Milwaukee area. He was indicted in December 1999 in the Eastern District of Wisconsin on fraud and money laundering charges. In October 2000, Shah was convicted following a bench trial of five fraud counts but acquitted on the money laundering charges.[3] The losses resulting from the fraud counts exceeded $20 million. After his conviction, Shah was allowed to remain free on bail pending sentencing, but the district judge added an additional condition to his release, that Shah be placed on electronic monitoring. Sentencing was set for January 11, 2001.

Shah's possible statutory penalties totaled eighty years; however, Shah did not appear for his sentencing. In November 2000, while he was free on bail following his conviction, Shah began socializing with appellant Zamora, who was the brother of Shah's ex-wife. Shah's purpose was more than mere socializing. In mid-November, with Shah's help Zamora began altering his appearance to look like Shah. He changed the color of his hair from gray-blond to black and went from "mangy" looking hair, as the government describes it, to a neat look. Zamora shaved off his mustache. He also bought at a convenience store

---

[1] See *United States v. Shah*, 193 F.Supp. 2d 1091 (E.D. Wis. 2002), dealing with the government's request for a forfeiture of Shah's bond, for background.

[2] At the time the government's brief was filed in this case, Shah had been apprehended in India and was facing extradition.

[3] Shah was convicted of fraud under 18 U.S.C. §§ 1343, 1344, and 2314.

a pair of black glasses he did not otherwise need as he wore prescription contacts. The photo exhibits in the record suggest a Hollywood makeup artist could not have done better to facilitate Shah and Zamora's scheme.

On November 16, 2000, Zamora secured a new Wisconsin driver's license. On November 21, he borrowed Shah's Porsche to drive to Chicago to get a passport. According to Zamora, Shah could not accompany Zamora to Chicago because the electronic monitoring did not allow Shah to leave his home. Zamora obtained the passport, using his new driver's license as identification. For the passport photo, Zamora wore a sport jacket and tie, instead of one of his customary t-shirts. The clothes were provided to him by Shah so, as Zamora explained it, he could "look more professional."

Then it was Shah's turn. On December 22, 2000, Shah, who wears prescription glasses, purchased new frames from an optical store. These frames were shaped like the ones worn by Zamora in his new passport photo. Shah was now ready to go. On December 23, he went to Midway Airport in Chicago. Delta Air Lines records show that someone using Leonides Zamora's passport departed from Midway Airport on December 23 and traveled to Cincinnati, then to Atlanta, and from Atlanta to Frankfort, Germany, finally arriving in Bombay, India on December 25. Bank records show that a debit card in the name of Yogesh Shah was used in Frankfort and Bombay during this time period. Additionally, just before December 23, Shah wired $30,000 to India. Other bank records show that on November 22, 2000, one of Shah's daughters wrote a $50 check to an attorney representing Zamora in a traffic matter and, on December 12, 2000, that daughter wrote a $300 check payable to Zamora.

In January 2001, the FBI interviewed Zamora about his passport. Zamora admitted to getting the new pass-

port and stated that he obtained the passport because Shah had offered to purchase a trip to India for him. When asked what happened to the passport, Zamora stated that shortly after Thanksgiving 2000, he looked for the passport but could not find it. Zamora told the FBI agent that the last time he remembered seeing the passport, he had taken it out to show Shah, because Shah had asked to see it. Zamora said that, when he could not find the passport, he attempted unsuccessfully to contact Shah several times to see if Shah had it. Zamora denied receiving any money from Shah, although he did inform the agent that Shah paid for both the new driver's license and the passport. The agent also questioned Zamora about the radical change in his appearance just before the passport photo was taken. Zamora stated that he had decided to change his hair and mustache because when he would go to bars in the Milwaukee area people would tease him about his appearance. When asked why he wore glasses in his passport photo, Zamora explained that, while he regularly wore contact lenses, he wore drugstore glasses for the photo so it would be accurate in case he ever lost his contacts and had to resort to glasses.

Zamora was indicted on February 13, 2001 on charges of conspiring to assist Shah in failing to appear in court for sentencing in violation of 18 U.S.C. §§ 371 and 3146, conspiring to have Shah use a passport issued for the use of another in violation of 18 U.S.C. §§ 371 and 1544, and misuse of a passport in violation of 18 U.S.C. § 1544. Zamora was found guilty following a jury trial and was sentenced on August 1, 2001. With respect to the conspiracy charges, the proper guideline for violations falling under 18 U.S.C. § 371 is U.S.S.G. § 2X1.1(a). Under U.S.S.G. § 2X1.1(a), the defendant's base offense level is "[t]he base offense level from the guideline for the substantive offense, plus any adjustments from such guide-

line for any intended offense conduct that can be established with reasonable certainty." For the conspiracy to assist in failing to appear charge, the district court, therefore, turned to U.S.S.G. § 2J1.6, entitled "Failure to Appear by Defendant," and assigned a base offense level of 6. The district court then applied a nine-level enhancement under § 2J1.6(b)(2)(A), which provides for a nine-level increase in cases in which the "underlying offense" is punishable by imprisonment for a term of fifteen years or more. Application Note 1 to § 2J1.6 defines "underlying offense" as "the offense in respect to which the defendant failed to appear." The district court rejected Zamora's contention that the § 2J1.6(b)(2)(A) enhancement did not apply to him because it was Shah, not Zamora, who failed to appear on the underlying charges. The district court sentenced Zamora to thirty months imprisonment on each count with the sentences to run concurrently.

Zamora filed a timely notice of appeal. As previously noted, Zamora is challenging only the applicability of U.S.S.G. § 2J1.6(b)(2)(A). We review the legal interpretation of a section of the Guidelines *de novo*. *United States v. Jones*, 313 F.3d 1019, 1021 (7th Cir. 2002).

It is undisputed that Shah's possible statutory exposure on the fraud charges was eighty years. Zamora contends that § 2J1.6(b)(2)(A) should not apply to his sentence because (1) there is no evidence that Zamora knew or reasonably should have known the range of penalties Shah was facing and (2) the length of Shah's sentence was determined prior to the conspiracy being formed and played no role in furthering the objectives of the conspiracy. Zamora asserts that the intent of the Guidelines is "only to hold defendants in a conspiracy liable for acts which occurred during the conspiracy that were foreseeable." Under Zamora's reasoning, the § 2J1.6(b)(2) enhancements are predicated on the pre-

sumption that the defendant knows his possible statutory exposure on the underlying offense, a presumption that he believes is generally reasonable when the defendant in the failure to appear case is the actual fugitive. However, Zamora asserts that in the present case it is unjust to presume he knew the range of penalties Shah was facing and to hold him accountable for conduct which occurred before he joined the conspiracy.

We turn first to Zamora's foreseeability argument. Section 2J1.6(b)(2)(A) is a specific offense characteristic. Under U.S.S.G. § 1B1.3(a)(1)(B), in determining specific offense characteristics for a conspiracy, the court may consider "all reasonably foreseeable acts and omissions of others in furtherance of the jointly undertaken criminal activity." Assuming Zamora is correct in asserting that the underlying statutory exposure must be either known or reasonably foreseeable in order for § 2J1.6(b)(2)(A) to be applied to a co-conspirator, Zamora's argument nevertheless fails. The district court expressly rejected Zamora's contention that Zamora was unaware of the penalties Shah was facing. The district court noted that Zamora was not a stranger to Shah, but rather his brother-in-law, and that Shah talked with and assisted Zamora throughout the entire process of obtaining a passport. The district court concluded, "it's difficult for me to believe that Mr. Zamora did not know that Mr. Shah was facing substantial incarceration. It defies logic to conclude otherwise." This factual finding is not clearly erroneous. *See United States v. Girardi*, 62 F.3d 943, 946 n.2 (7th Cir. 1995). In addition to the fact that Zamora was Shah's former brother-in-law, the record reveals that Shah and Zamora were often in contact with one another soon after Shah was convicted and that Zamora knew Shah was subject to electronic monitoring.

We turn next to Zamora's contention that Shah's statutory exposure on the underlying offense, determined be-

fore the conspiracy was formed, was not conduct occurring during the conspiracy and played no role in furthering the objectives of the conspiracy. As the Ninth Circuit noted in *United States v. Nelson*, 919 F.2d 1381, 1383-84 (9th Cir. 1990), the § 2J1.6(b)(2) enhancements are tied solely to the status of the defendant at the time he flees and apply even if that defendant is ultimately acquitted of the charges from which he fled. The § 2J1.6(b)(2) enhancements increase a defendant's sentence based on the seriousness of the situation at the time the failure to appear occurred and are not designed as punishment for the underlying offense. *See id.* at 1384-85. Similarly, applying § 2J1.6(b)(2)(A) in Zamora's case does not punish Zamora for Shah's conduct prior to Zamora's joining the conspiracy. It is clear that Zamora played no role in the fraud which constituted the underlying offense. However, Zamora assisted Shah in fleeing the country when Shah had been convicted on serious charges and was facing sentencing which could result in possible imprisonment for up to eighty years. The district court did not err in applying the § 2J1.6(b)(2)(A) enhancement. Zamora's sentence is affirmed.

AFFIRMED.

A true Copy:

Teste:

_____
*Clerk of the United States Court of*
*Appeals for the Seventh Circuit*