In the

# United States Court of Appeals

## For the Seventh Circuit

No. 09-1211

UNITED STATES OF AMERICA,

*Plaintiff-Appellee,*

*v.*

ADAM MEECE,

*Defendant-Appellant.*

Appeal from the United States District Court
for the Western District of Wisconsin.
No. 3:08-cr-00095-bbc-1—**Barbara B. Crabb**, *Chief Judge.*

ARGUED MAY 28, 2009—DECIDED SEPTEMBER 2, 2009

Before BAUER, FLAUM and KANNE, *Circuit Judges.*

BAUER, *Circuit Judge.* After police arrested Adam Meece, they obtained consent from his girlfriend, Jami Lee, to search the home the couple shared. The search revealed two handguns and Meece was charged and convicted of illegally possessing a firearm as a felon. Meece claims that his arrest was unlawful and that news of the arrest startled Lee into consenting to the search, so that the district court should have granted his motion

to suppress the handguns as fruits of a tainted search. He also claims that the district court erred by applying a sentence enhancement for using a firearm in connection with another felony, and that his sentence is procedurally and substantively unreasonable. We affirm.

## I. BACKGROUND

On April 17, 2008, Meece was serving a state term of extended supervision following his release from prison on a felony conviction. Officer Denise Markham, of the Madison, Wisconsin Police Department, received a phone call that day from an anonymous informant accusing Meece of possessing two or three handguns and cocaine at a residence he shared with his girlfriend. Markham asked the informant several questions in an attempt to learn about the caller's relationship to Meece and the basis of the caller's knowledge. Confident of the informant's credibility, Markham reported the information to Meece's probation officer, who then asked Markham to take Meece into custody pursuant to the terms of Meece's extended release.[1]

---

[1] Wisconsin Statute § 302.113(8m)(a) states: "Every person released to extended supervision under this section remains in the legal custody of the department. If the department alleges that any condition or rule of extended supervision has been violated by the person, the department may take physical custody of the person for the investigation of the alleged violation."

Meece was arrested that same afternoon on his way home from work. Markham and other officers then went to the house that Meece and Lee shared. The officers told Lee that Meece had been arrested and that they believed there were guns in the home. Lee consented to a search of the house, which revealed two handguns under the mattress of Meece's bed. In the kitchen, the officers found a scale, several plastic baggies, and a Tupperware bowl, all containing cocaine residue. Finally, a police dog alerted the officers to $3,400 in cash hidden in the basement rafters.

Meece was charged in a single-count indictment with unlawfully possessing a firearm as a convicted felon, in violation of 18 U.S.C. § 922(g)(1). He moved to suppress the evidence of the weapons found in his home on the theory that the officers lacked authority to take him into custody and that his illegal arrest tainted the discovery of the weapons by influencing Lee's consent to search the house. The district court denied the motion and Meece pleaded guilty while reserving his right to appeal the court's ruling on the motion.

At sentencing, the district court applied an offense level enhancement pursuant to U.S.S.G. § 2K2.1(b)(6) for possessing the handguns in connection with a felony drug crime. With this enhancement, Meece's Guidelines sentencing range was from 63 to 78 months. The district court sentenced Meece to 78 months' imprisonment.

## II.  DISCUSSION

Meece makes four arguments on appeal: (1) that his arrest was unlawful; (2) that this unlawful arrest tainted Lee's consent to search the house, so that the guns should have been suppressed; (3) that the district court erroneously applied the sentence enhancement; and (4) that his sentence is unreasonable.

### A.  Arrest

Meece's first argument, and the predicate for his second, is that his arrest was illegal. Because Meece was serving a term of supervised release, he could be detained upon a reasonable suspicion that he had committed, or was about to commit, a crime or violation of the terms of his supervised release. *Knox v. Smith*, 342 F.3d 651, 657 (7th Cir. 2003). Meece claims that the district court erred in finding that there was reasonable suspicion for the arrest because, although Markham testified that she asked the anonymous informant several questions and received satisfying answers to those questions, Markham never stated what those answers were. Without knowing the answers, Meece claims, there is no way to determine whether the informant was credible and, therefore, no way to know if Markham had a reasonable suspicion that Meece had committed a crime. The district court found that Markham's testimony was sufficient to show that she had a reasonable suspicion, even though it would have been better if Markham had revealed the informant's answers so that they could be evaluated.

It certainly would be better to know the answers given by the informant, but we do not need to decide whether the evidence in this case was sufficient to support a finding of reasonable suspicion. The heart of Meece's appeal is that the handguns found in his home should have been suppressed. The potential illegality of his arrest is useful to Meece only if he can use it to prove that the evidence of the handguns was tainted. As explained below, he cannot.

### B.  Taint

Meece's second argument is that the news of his illegal arrest tainted Lee's consent to the officers' search, so that the evidence found during the search should have been suppressed. "We review a district court's findings of fact in a suppression hearing for clear error and its conclusions of law de novo." *United States v. Jackson*, 300 F.3d 740, 745 (7th Cir. 2002).

Evidence is not automatically tainted "simply because it would not have come to light but for the illegal actions of the police." *Wong Sun v. United States*, 371 U.S. 471, 487-88 (1963). Neither is all evidence inadmissable that "somehow came to light through a chain of causation that began with [illegal police activity]." *United States v. Ceccolini*, 435 U.S. 268, 276 (1978). But establishing that Meece's arrest influenced Lee's consent is a necessary start. There must be some causal nexus between the illegal police activity and the disputed evidence. As Meece properly states in his brief, "[e]vidence which is obtained *as a result of* an illegal arrest is fruit of the

poisonous tree . . . ." *United States v. Swift*, 220 F.3d 502, 507 (7th Cir. 2000) (emphasis added). If the news of the arrest did not influence Lee's consent, we do not even need to consider whether obtaining Lee's consent (and, ultimately, the guns) was independent of the arrest, inevitable, or in some other way sufficiently distanced from the presumptively illegal arrest. *See id.* ("The evidence may be purged of the taint by a finding that it was discovered by an independent source, that it would inevitably have been discovered without the unlawful [activity], or that its discovery is sufficiently distant in causal connection from the illegal [activity] so as to attenuate the connection between the two.").

Whether Lee's consent was influenced by the news of Meece's arrest is a factual determination that we review for clear error. "Clear error review means that the district court's decision will not be reversed unless after reviewing the entire record we are left with a definite and firm conviction that a mistake has been committed." *United States v. Carmack*, 100 F.3d 1271, 1276 (7th Cir. 1996).

The record in this case supports two theories as to why Lee consented to the search, neither of which helps Meece. Markham testified that when Lee consented to the search, she said that she had children in the house and that she was worried about the guns. Lee's affidavit and testimony claimed that she consented to the search because she needed to pick up her child from daycare and Markham threatened that if Lee did not consent to the search, the officers would get a warrant, which

could take hours, and that, during that time, Lee would not be allowed to leave the house.[2] Lee never even hinted that the news of Meece's arrest prompted her consent; whether she consented to the search out of a concern for her children's safety or because she needed to pick up her child from daycare is irrelevant.

Meece does make a good point that the magistrate judge and, to a lesser extent, the district court took one of Lee's statements out of context. During cross-examination at the evidentiary hearing, Lee stated about Meece: "Quite honestly, he has been in trouble before and I pretty much have taken care of my three children by myself for a very long time . . . ." The magistrate judge used this statement to conclude that "Meece's arrest had zero impact on Lee's consent to search: she testified that Meece's arrest was absolutely inconsequential to her thought process." The district court stated that "Lee testified that the defendant's arrest was hardly surprising or even consequential."

Meece is correct that Lee's statement was in response to the government's persistent accusation that she was lying during the evidentiary hearing to protect the father of her children. It was not related to her thought process on the day she gave consent. But the fact

---

[2] The magistrate judge and district court credited the officers' version of events and Meece does not claim that Lee's consent was coerced by this reported threat of not being allowed to leave the house until a search warrant was obtained and executed.

remains that Lee had two opportunities to claim that her consent was influenced by the news of Meece's arrest and never made that claim. The district court was correct in observing that "Lee testified at the hearing and said nothing to suggest that defendant's arrest was a factor in her decision to let the officers into her house."

Meece simply fails to point us to any convincing evidence that Lee was influenced by Meece's arrest. Meece's claim that the news of his arrest must have influenced Lee's consent falls short. The fact that Lee consented to the search after learning of Meece's arrest is not sufficient; chronology does not prove causation. The district court did not err in denying Meece's motion to suppress.

### C.  Sentence Enhancement

Meece next argues that, even if his conviction was proper, the district court erroneously applied a sentence enhancement under U.S.S.G. § 2K2.1(b)(6). That section increases a defendant's offense level by four levels "[i]f the defendant used or possessed any firearm or ammunition in connection with another felony offense; or possessed or transferred any firearm or ammunition with knowledge, intent, or reason to believe that it would be used or possessed in connection with another felony offense." "We review the district court's application of sentencing guidelines de novo, but where the district court bases the application of a sentencing guideline on factual findings, we review for clear error." *United States v. Wagner*, 467 F.3d 1085, 1089 (7th Cir. 2006).

"[R]eview of a district court's sentencing enhancement under U.S.S.G. § 2K2.1(b)([6]) is a mixed question of fact and law that we review for clear error." *United States v. Markovitch*, 442 F.3d 1029, 1031 (7th Cir. 2006) (citing *United States v. Wyatt*, 102 F.3d 241, 246 (7th Cir. 1996)).

We have stated before that "[t]he seizure of a firearm in close proximity to illegal drugs is considered powerful support for the inference that the firearm was used in connection with the drug trafficking operation." *Markovitch*, 442 F.3d at 1032 (quoting *United States v. Ewing*, 979 F.2d 1234, 1238 (7th Cir. 1992)); *see* U.S.S.G. § 2K2.1 Application Note 14(B) (firearm found in close proximity to drug paraphernalia triggers the enhancement). In this case, the search of Meece's house revealed two handguns and $3,400 in cash, as well as a scale, several baggies, and a Tupperware bowl all containing cocaine residue. The district court concluded that Meece was trafficking drugs and that the guns were in the house to protect against the increased risk of a home invasion associated with drug trafficking. *See United States v. LePage*, 477 F.3d 485, 489 (7th Cir. 2007) (When "guns are possessed along with the materials of a drug trafficker, it is a reasonable inference that the guns protect or embolden the criminal enterprise.").

Meece argues that the guns were not in close proximity to the drug paraphernalia because the guns were found upstairs while the scale and baggies were found on the main floor and the cash was recovered from the basement. We are unpersuaded by this argument. If, as the district court found, the guns were present to protect against the increased risk of a home invasion, then the

bedroom was a logical place to store them. It would do no good, for example, to keep the guns in the basement rafters with the cash.

While various inferences might be drawn from the facts of this case, we cannot conclude that the district court's interpretation of the facts and use of the enhancement was in error. *See Markovitch*, 442 F.3d at 1031 ("Where there are two permissible views of the evidence, the factfinder's choice between them cannot be clearly erroneous." (quoting *Anderson v. City of Bessemer*, 470 U.S. 564, 574 (1985))).

### D.  Reasonableness of Sentence

Meece's final argument challenges the length of his sentence. A district court must impose a reasonable sentence and we review sentences for an abuse of discretion. *Gall v. United States*, 128 S. Ct. 586, 594 (2007). When a sentence is within a properly calculated Guidelines range it "is entitled to a rebuttable presumption of reasonableness" on appeal. *United States v. Nitch*, 477 F.3d 933, 937 (7th Cir. 2007); *see Rita v. United States*, 551 U.S. 338, 347 (2007).

Meece argues that his sentence was imposed in a procedurally unreasonable manner because the district court improperly calculated his Guidelines range by applying the sentence enhancement. We have already found that the enhancement was appropriate, so this argument fails.

Meece also argues that, even if his Guidelines range was properly calculated, his sentence is substantively

unreasonable and that the district court did not adequately explain how "a 78 month stay in prison would be the least means necessary to meet any of the goals set out in 18 U.S.C. § 3553."[3] Meece does not explain why his sentence is unreasonable other than stating that "[p]ossession of a firearm, alone, does not provide much guidance to a court when determining a proper sentence" and pointing out that Meece's only other felony conviction was for failing to return to a work release program. As discussed below, the district court considered more than Meece's bare possession of two handguns; Meece cannot rebut the presumption of reasonableness.

Meece's argument that the district court failed to explain how the sentence was appropriate in light of the goals set out in § 3553(a) also falls short. "The district court need not address each § 3553(a) factor in checklist fashion, explicitly articulating its conclusion for each factor; rather, the court must simply give an adequate statement of reasons, consistent with § 3553(a), for believing the sentence it selects is appropriate." *United States v. Panaigua-Verdugo*, 537 F.3d 722, 728 (7th Cir. 2008). In this case, the district court adequately explained the necessity of the sentence imposed at the sentencing hearing. She explained to Meece: "Your willingness to ignore the consequences of your actions is chilling. You are very dangerous to the community. At this point, the

---

[3] Failing to consider the § 3553(a) factors is actually procedural error. *Gall*, 128 S. Ct. at 597. Meece addresses it under substantive reasonableness, but it makes no difference in this case.

damage has been relatively contained, but I see you as a potential threat for a long time to come." A little later, the court summarized the need for the 78-month sentence:

> Your criminal history reflects your lengthy involvement in criminal activity. You have alcohol and drug addictions, violent tendencies, and psychological problems. You've been afforded a number of opportunities for correctional treatment over the years, but they have not proved helpful. You committed this offense while you were on supervision, demonstrating a serious disregard for the law. When the seriousness of the offense is coupled with your prior criminal history, it warrants a sentence within the advisory guideline range, and I believe it warrants a sentence at the high end of the range. Such a sentence is reasonable and no greater than necessary to hold you accountable, protect the community, provide you the opportunity to participate in correctional treatment, and achieve parity with the sentences of similarly-situated offenders.

The district court thoroughly and thoughtfully considered the § 3553(a) factors in light of Meece's individual circumstances.

## III. CONCLUSION

For the reasons discussed above, we AFFIRM Meece's conviction and sentence.