# In the

# United States Court of Appeals

## For the Seventh Circuit

No. 08-3603

UNITED STATES OF AMERICA,

*Plaintiff-Appellee,*

*v.*

DAVID SIMMONS,

*Defendant-Appellant.*

Appeal from the United States District Court
for the Central District of Illinois.
No. 07 CR 10128—**Michael M. Mihm**, *Judge.*

ARGUED OCTOBER 9, 2009—DECIDED MARCH 30, 2010

Before POSNER, ROVNER, and WILLIAMS, *Circuit Judges.*

ROVNER, *Circuit Judge.* On September 14, 2007, a bank in Normal, Illinois, was robbed of approximately $5,862 by two gunmen. David Simmons was arrested that day for the crime, and a jury found him guilty of armed bank robbery under 18 U.S.C. § 2113(a) & (d), and of using or carrying a firearm during a crime of violence in violation of 18 U.S.C. § 924(c)(1)(A). Simmons has appealed that conviction to this court.

The robbery of the U.S. Bank in Normal occurred shortly after noon. Two men arrived at the bank armed with guns. While one man stood near the door pointing a gun at the people in the bank, the other approached the teller counter and demanded money. Surveillance cameras captured the scene, but both men wore white coverings over their faces hindering identification. In addition, both men wore light-colored gloves, with the result that no useable fingerprints were recovered from the bank. After obtaining approximately $5,862 from the tellers and placing it in a backpack, the men fled the bank by foot.

Both men ran toward nearby railroad tracks, pursued by an employee of a local auto shop. The men eventually split as they approached the tracks, with one heading north into some bushes and the other running into an area of trees by a water utility building. The police were alerted to the location and descended on the area. An officer spotted a man crouched near some trees wearing a black shirt and something white on his head. When spotted, the man ran back into the trees and four detectives gave chase. Eventually he ran toward South Adelaide Street with the detectives in pursuit. A police officer responding to the scene saw a man running across South Adelaide Street wearing a dark sweatshirt and something white on his head. He circled a building and intercepted the man, who was later identified as David Simmons. They recovered a white t-shirt sleeve and black cap nearby, and found a loaded Glock handgun in the woods. The officers testified that at the station they recovered a pair of light-colored Under Armour

football gloves in Simmons' pants pocket. He was wearing a long-sleeved black t-shirt inside out with the tag visible, which was consistent with the clothing worn by one of the robbers on the surveillance tape. In addition, he had the cut-off sleeve of a white t-shirt around his neck.

At trial, the government introduced the testimonies of five eyewitnesses to the bank robbery, but none of them were able to identify Simmons as the perpetrator of the crime. The government also introduced statements made by Simmons when he was interrogated at the police station, which corresponded with the known details of the crime. In those statements, Simmons admitted that he carried the Glock firearm into the bank, that his role was to stay by the door to provide cover for the other bank robber, and that the other bank robber approached the tellers and told them to put money in the black backpack he was carrying. Simmons then acknowledged that they subsequently fled on foot, that he heard someone running behind them, and that they split up once they reached the railroad tracks. He further stated that he thought he had found a good hiding place, but once he saw the officer approach in his vehicle, he began running toward his grandmother's apartment, which was a block west of where he was arrested.

The government also introduced testimony relating to the gloves and ultimately introduced the gloves themselves into evidence. It is that testimony and evidence that forms the basis for Simmons' appeal. First, over defense counsel's objection, the district court allowed

Detective Merica to testify as to whether the gloves in Simmons' possession at the time of arrest were consistent with the gloves worn by the robbers in the surveillance photo. Merica had conducted the interview of Simmons at the police station and therefore had viewed firsthand the gloves found in Simmons' possession. Nevertheless, Simmons argued that Merica's testimony invaded the province of the jury by giving an opinion as to whether gloves offered as an exhibit were the same type as in the bank photo. The district court allowed it as lay opinion testimony under Federal Rule of Evidence 701, which provides for testimony in the form of opinions or inferences as a non-expert if those opinions or inferences are "(a) rationally based on the perception of the witness, (b) helpful to a clear understanding of the witness' testimony or the determination of a fact in issue, and (c) not based on scientific, technical, or other specialized knowledge within the scope of Rule 702."

The government later moved to admit the gloves into evidence, which the district court ultimately granted. Simmons challenges that as well, asserting that the chain of custody was so deficient that the gloves should not have been admitted. The government concedes that there is a gap in that chain of custody. Merica testified that after his interview of Simmons, he asked Detective Underwood to collect Simmons' clothing in the paper bag Underwood was carrying, and to bring Simmons' clothing back from the processing at the county jail. Underwood testified that he collected the clothing as requested, but did not personally collect gloves from Simmons and did not put gloves in the bag.

Underwood further testified that he gave the bag to Detective Acuncius. Acuncius testified that she received the bag from Underwood and photographed its contents. She testified that the bag contained, among other items, the Under Armour football gloves. She compared the photograph she had taken of the gloves to the gloves which the government sought to admit at trial, and noted that the gloves even had the same cocklebur on them that was apparent in the photograph.

Simmons argues that the gloves should not have been admitted into evidence because there is not evidence as to whether the gloves in the bag were the ones obtained from Simmons during the interview. The district court recognized the gap in the chain of custody, but admitted the evidence. The court relied on our cases in *United States v. Lee*, 502 F.3d 691, 697 (7th Cir. 2007), and *United States v. Williams*, 44 F.3d 614, 618 (7th Cir. 1995). In those cases, we made clear that gaps in the chain of custody go to the weight of the evidence rather than the admissibility where there is no evidence of tampering. *Id.*

Simmons' claims—particularly regarding the chain of custody—are not promising for him, but the appeal fails for a more glaring reason. We need not even consider whether the district court erred in admitting the gloves or in allowing testimony as to the similarity to the photos, because any possible error was harmless given the defendant's own testimony in the case. It is well-established that evidentiary errors are subject to harmless error inquiry. *United States v. Cooper*, 591 F.3d 582, 590 (7th Cir. 2010); *United States v. McGowan*, 590 F.3d 446, 456

n.1 (7th Cir. 2009). An error is harmless if the reviewing court is convinced that the jury would have convicted even absent the error. *Id.* Because Simmons' own testimony established that he possessed gloves when arrested, and that those gloves were the ones used in the bank robbery, the alleged errors could not have affected the outcome.

Simmons maintained at the trial that he was not one of the persons who robbed the bank. He stated, however, that he knew who those individuals were because he received a phone call from one of them letting him know what happened. Simmons testified that they had borrowed his car earlier in the day and they told him that they took his gloves that he kept in the car. They told him that they used those gloves in the robbery, and that they had later discarded the gloves along with the gun and white shirt. Simmons then testified that he decided to retrieve the gloves because he feared that his DNA would be in the gloves and would draw him into the crime. He therefore proceeded to the wooded area where they had stated the gloves were abandoned and he reclaimed the gloves, but stated that he left the gun where it had been discarded. He declared that the police spotted him as he was trying to flee the area, and that he ran because he knew who committed the crime but did not want to tell the police their names because he was protecting his family. The police caught him before he reached his grandmother's house and arrested him.

Simmons thus testified that the gloves in his possession at the time of the arrest were in fact the gloves that had

been used in the robbery. He cannot now complain that Merica's testimony improperly tied those gloves to the ones in the bank photo, given that he has admitted at trial that the gloves are in fact the ones in the bank photo. Nor was their admission into evidence potentially harmful, given that he has acknowledged that the gloves which belonged to him and were in his possession at the time of the arrest were the ones used in the bank robbery. Simmons asked the jury to resolve not whether the gloves were his, but whether they were used by someone other than himself at the bank and then retrieved by him. The testimony by Merica and the admission of the gloves into evidence did not impact that determination in any way. Because the government's evidence challenged by Simmons merely supported Simmons' own theory of the case, this is as clear a case of harmless error as we are likely to see. The decision of the district court is AFFIRMED.