# In the

# United States Court of Appeals

## For the Seventh Circuit

No. 11-3347

UNITED STATES OF AMERICA,

*Plaintiff-Appellee*,

*v.*

FAIRLY W. EARLS,

*Defendant-Appellant.*

Appeal from the United States District Court
for the Northern District of Indiana, Hammond Division.
No. 10 CR 222—**Joseph S. Van Bokkelen**, *Judge.*

ARGUED SEPTEMBER 17, 2012—DECIDED DECEMBER 27, 2012

Before EASTERBROOK, *Chief Judge*, and BAUER and
WOOD, *Circuit Judges*.

BAUER, *Circuit Judge*. On July 10, 2011, a jury found
Fairly W. Earls ("Earls") guilty of making a false state-
ment on a passport application, aggravated identity
theft, and knowingly transferring a stolen identification
document in violation of 18 U.S.C. § 1542, § 1028A(a)(1),
and § 1028(a)(2). On October 5, 2011, the district court
sentenced Earls to thirty-six months' imprisonment on

Counts One and Three with a consecutive sentence of twenty-four months' imprisonment on Count Two. Earls' base offense level at sentencing was determined to be eight; however, through the application of a cross-reference listed in Sentencing Guidelines Section 2L2.2(c)(1)(A), Earls' offense level was increased to fifteen. On appeal, Earls challenges the admission of certain evidence at trial, as well as his sentence. For the following reasons, we affirm.

## I. BACKGROUND

In February 1999, Earls was convicted in Wisconsin state court of three felony counts of sexual assault of a six-year-old child in violation of Wisconsin Statute § 948.02. Earls was sentenced to forty-five years' imprisonment and twenty years' probation. After exhausting his state court remedies, Earls sought a federal writ of habeas corpus, alleging ineffective assistance of counsel. In August 2004, we concluded that Earls' trial counsel was ineffective and ordered that either the writ be granted or the State retry Earls. *See Earls v. McCaughtry*, 379 F.3d 489 (7th Cir. 2004). The state opted to retry.

In February 2005, Earls posted a $25,000 cash bond with the Wisconsin state court. As a condition to Earls' release, he agreed to appear at all court dates, have no contact with minors, and notify the court if his address changed. When Earls bonded out of jail, he was listed as living with his sister Alice in Burbank, Illinois, a home Alice had previously shared with her ex-husband David Fuhrman.

On October 31, 2005, the state of Wisconsin filed a new case against Earls, charging him with twelve counts of bail jumping, in violation of Wisconsin Statute § 946.49. In October and November 2005, Earls violated his bond conditions by failing multiple times to appear in court for hearings and having contact with a minor. Consequently, a bench warrant was issued. In late December 2005, Earls' $25,000 cash bond was forfeited. In January 2006, Wisconsin law enforcement enlisted the United States Marshal Service to help track down Earls. The Marshal Service interviewed Earls' friends and family, including his sister Alice, but were unable to generate any leads.

Meanwhile, on December 9, 2005, an individual had requested the State of Illinois Department of Public Health to issue a certified copy of the birth certificate of David Fuhrman, Earls' former brother-in-law. This was done without Fuhrman's knowledge or consent. Then on March 14, 2006, the individual brought the birth certificate, together with Fuhrman's divorce decree, to the Indiana Bureau of Motor Vehicles and obtained an Indiana state identification card in Fuhrman's name. Later that same day, the individual went to an Indiana post office and applied for a passport using the newly obtained Indiana state identification card and Illinois birth certificate. The passport application listed Fuhrman's correct name, date of birth, and social security number. Several weeks after the application was submitted, the Department of State issued a passport in the name of David Robert Fuhrman.

On June 21, 2006, the new Fuhrman passport was used to gain entry into Panama. The holder of the passport left Panama three days later and traveled to Nicaragua and Costa Rica. Additional passport stamps show that the passport holder entered Panama again in 2007. In January 2008, Earls used the Fuhrman passport to obtain a Panamanian Retirement Tourist Visa in Fuhrman's name. Earls denied at trial that he was the individual that applied for the subject passport, however, he did not dispute that he lived in Panama and used a passport in the name of David Fuhrman while living there.

In August 2010, nearly five years after Earls had failed to appear for his hearings in Wisconsin state court, the United States Marshal Service received a tip that Earls was living in Panama under the name David Fuhrman. The Marshal Service contacted the Department of State, which provided the photo used to obtain the Fuhrman passport. The deputy marshal in receipt of the photo recognized the man as Earls and notified the Department of State, which then reached out to the United States Embassy in Panama. In Panama, an investigator examined the immigration records and discovered that an individual identifying himself as David Fuhrman was living in Boquete. The investigator and Panama National Police went to Boquete and saw Earls walking into a grocery store. Earls was then arrested, returned to the United States, and subsequently indicted.

On July 10, 2011 a jury found Earls guilty of making a false statement on a passport application, aggravated

identity theft, and knowingly transferring a stolen identification document. The Presentence Investigation Report (PSR) recommended an offense level of fifteen. The PSR originally set a base offense level for Earls' offense at eight, but increased the offense level (through a cross-reference pursuant to § 2L2.2(c)(1)(A)) because Earls utilized the fraudulently obtained passport in the commission of a felony offense, namely bail jumping. After considering the PSR's recommendation, and evaluating the sentencing factors listed in 18 U.S.C. § 3553(a), the district court sentenced Earls to thirty-six months' imprisonment on Counts One and Three with a consecutive twenty-four months' imprisonment on Count Two. The district court noted that this above-range sentence was sufficient, but not greater than necessary, in light of Earls' prior convictions for sexually abusing his daughter and another 13-year-old, and general lack of respect for the law.

## II. DISCUSSION

Earls now files a three-fold appeal. He contends that the trial court erred in admitting prejudicial evidence that he faced up to sixty years in prison on his pending state felony charges, that the trial court improperly allowed two Government agents to identify Earls via photographs at trial, and finally, that the trial court erred when it applied the cross-reference provision in Sentencing Guideline § 2L2.2(c)(1)(A). We address each issue in turn.

### A.  Evidence of Potential State Penalties

Earls' first contention is that the district court erred in admitting evidence that Earls was facing up to sixty years in prison on pending state felony charges. A trial court's evidentiary rulings will not be reversed on appeal, absent a showing of abuse of discretion. *United States v. Chambers*, 642 F.3d 588, 594 (7th Cir. 2011). If we find there was an abuse of discretion, we then review whether the error was harmless. *See United States v. Miller*, 673 F.3d 688, 699 (7th Cir. 2012).

At the time Earls fled to Panama, he was also facing three felony charges in Wisconsin state court, carrying a potential penalty of up to sixty years in prison. Before trial in this case, the Government filed notice that it intended to introduce these penalties as motive evidence pursuant to Federal Rule of Evidence 404(b). The Government argued that these charges, and their corresponding penalty, were admissible as evidence of Earls' motive in obtaining Fuhrman's passport and fleeing to Panama.

Earls objected, in part, arguing that informing the jury of the maximum penalties he faced invited speculation as to the nature of the charges, and risked substantial prejudice. Earls offered to stipulate that he faced felony charges, posted a $25,000 bond that was then forfeited, and that he now faced additional felony charges with substantial penalties. The district court denied Earls' objection and permitted the Government to admit evidence that the penalties at issue were substantial and what those penalties would be. However, the

district court ruled that the Government could not delve into the actual charges unless the door was opened by Earls. The district court also said it would give a limiting instruction directing the jury to consider the evidence only as it pertained to motive.

At trial, over Earls' objection, the Government introduced evidence that Earls faced three additional felony charges in Wisconsin state court, with a potential penalty of up to sixty years in prison. The Government did not mention the specific offenses charged and the district court gave a limiting instruction as promised.

On appeal, Earls argues that the district court committed procedural error by failing to consider whether the probative weight of the motive evidence was substantially outweighed by the danger of unfair prejudice. Earls also contends that the district court committed substantive error by rejecting his proposed stipulation, that he faced "substantial penalties" in Wisconsin state court and forfeited a $25,000 bond. Earls believed this stipulation fairly apprised the jury of his motive to commit the alleged offenses without the danger of unfair prejudice. Earls further argues that informing the jury of the maximum penalties he potentially faced only invited speculation as to the nature of the charges.

First, Rule 404(b) does not provide a rule of automatic admission whenever bad acts evidence can be plausibly linked to "another purpose," such as knowledge or intent, listed in the rule. *United States v. Miller*, 673 F.3d 688, 696 (7th Cir. 2012). The Rule 402 requirement of relevance and the unfair prejudice balancing inquiries

of Rule 403 still apply with full force. *Id*. (citations omitted). Under Rule 403, relevant evidence "may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice." Fed. R. Evid. 403; *United States v. Ozuna*, 674 F.3d 677, 682 (7th Cir. 2012). When determining the admissibility of evidence under Rule 403, this Court "employ[s] a sliding scale approach: as the probative value increases, so does our tolerance of the risk of prejudice." *Whitehead v. Bond*, 680 F.3d 919, 930 (7th Cir. 2012).

In Earls' case, the state court penalties he faced were highly probative as to his motive to flee. Earls was fifty-one years old in 2004, and he was facing a potential sentence that would have likely resulted in him spending the rest of his life in prison. Earls argues that informing the jury of the maximum penalty he faced only invited speculation as to the possible heinous nature of the charges. We acknowledge that this was a possibility. Nevertheless, the length of the penalty itself is exactly what made this evidence probative into Earls' motive to flee the country. In this case, the district court conducted the Rule 403 balancing test and excluded the fact that Earls' pending charges involved the sexual assault of a six-year-old. Further, it was made clear during trial that Earls did not face a mandatory minimum penalty. Therefore, the jury was aware that Earls could have received a sentence ranging from probation to sixty years. This balanced presentation of the evidence mitigated any potential risk of unfair prejudice and certainly does not outweigh the probative value of this motive evidence.

Seeking to avoid this result, Earls relies on *United States v. Ciesiolka*, 614 F.3d 347 (7th Cir. 2010). In *Ciesiolka*, we found that the district court abused its discretion by admitting mountains of Rule 404(b) evidence, much of which was highly prejudicial, and introduced in a seemingly unconstrained way. *Id*. at 358. However, in *Ciesiolka*, the prejudicial evidence at issue was day-long exposure to voluminous evidence that included appalling images of child pornography and numerous offensive instant message conversations. *Id.* at 357. We reasoned that there was a real danger that such evidence, dumped without restraint into the record, can lead a jury to convict a defendant not on the basis of proof of the crime with which he has been charged, but for simply being a bad person. *Id.* The appalling and voluminous images offered in *Ciesiolka* differs vastly from the evidence at issue here. Moreover, we noted in *Ciesiolka* that the prejudice could conceivably have been cured by appropriate limiting instructions. *Id*. at 358. The district court in Earls' case provided such a limiting instruction, directing the jury to only consider the evidence of Earls' possible state penalties as evidence of motive. Therefore, we find the district court did not abuse its discretion in admitting Rule 404(b) evidence in this case.

## B. Photo Identification

Earls next objects to the trial testimony of Deputy Marshal Jeremy Loesch and Department of State Special Agent Ben Hammond, who testified for the Government

that Earls was the man depicted in the photographs attached to the Fuhrman passport application and Indiana state identification card. Earls objected to the testimony of both witnesses. Both parties agree that the identifications by Deputy Marshal Loesch and Special Agent Hammond from the photographs are considered lay opinion evidence and their admissibility at trial is governed by Federal Rule of Evidence 701. Rule 701 allows a lay witness to give opinion testimony if it is: "(a) rationally based on the witness' perception, or (b) helpful to clearly understand the witness' testimony or determine a fact at issue." Fed. R. Evid. 701. Earls argues that Deputy Marshal Loesch and Special Agent Hammond's testimony constituted invalid lay opinions because their testimony was not based upon personal knowledge of Earls and was not "helpful" as defined by Rule 701. We review evidentiary rulings of the district court under a deferential standard, to determine if there was an abuse of discretion. "A district court abuses its discretion when it commits an error of law or makes a clearly erroneous finding of fact." *Christmas v. City of Chicago*, 682 F.3d 632, 638 (7th Cir. 2012).

The theory behind Rule 701 "is that wherever inference and conclusions can be drawn by the jury as well as by the witness, the witness is superfluous; . . . a lay opinion is received because and whenever his facts cannot be so told as to make the jury as able as he to draw the inference." *United States v. Jackson*, 688 F.2d 1121, 1124 (7th Cir. 1982); citing 7 Wigmore on Evidence (Chadbourn rev. 1978) § 1917.8 at 10. Here, the Government concedes that neither the Deputy Marshal or the Special

Agent had personally met Earls prior to their identifica-
tion testimony. Their knowledge of Earls' physical
features stems from their role in his investigation,
during which both the Deputy and the Special Agent
viewed multiple photographs of Earls. However, the
Deputy Marshall and Special Agent were looking at the
same photographs that had already been given to the
jury, and neither man had personal contact with Earls
prior to trial that would have placed them in a better
position to identify Earls as the man depicted in the
photographs than the jury. Rule 701 permits a witness
to offer helpful testimony based upon his or her own
perceptions. Our sister circuits have consistently held
that Rule 701 does not extend so far as to allow a
witness to serve as the thirteenth juror and compare
two pieces of evidence that are already available to the
jury. See *United States v. LaPierre*, 998 F.2d 1460, 1465
(9th Cir. 1993) (The task of identifying the defendant in
a surveillance photograph is a task best left to the jury,
rather than a witness who had never personally met the
defendant prior to trial); *United States v. Jackman*, 48 F.3d
1, 4-5 (1st Cir. 1995) (Upholding lay opinion identification
testimony "when the witness possesses sufficiently rele-
vant familiarity with the defendant that the jury cannot
also possess, and when the photographs are not either
so unmistakably clear or so hopelessly obscure that the
witness is no better-suited than the jury to make the
identification" ); *United States v. Pierce*, 136 F.3d 770, 774
(11th Cir. 1998) (Whether a particular witness is better
suited than the jury correctly to identify a defendant as
the individual depicted in surveillance photographs

turns on a number of factors . . . [p]erhaps most critical to this determination is the witness's level of familiarity with the defendant's appearance).

In this case, we find the testimony of Deputy Marshal Loesch and Special Agent Hammond to be of dubious value. Neither man had ever met Earls prior to trial. Furthermore, their identification testimony was solely the comparison of two photographs already in evidence. We believe this is a matter that should have been left to the jury, and find that the Deputy and Special Agent's testimony was admitted in error.

Nonetheless, Earls' conviction still stands because the error was harmless. "An error is harmless if the reviewing court is convinced that the jury would have convicted even absent the error." *United States v. Simmons*, 599 F.3d 77, 780 (7th Cir. 2010). Earls conceded that he used the Fuhrman passport in Panama to secure a Panamanian retirement visa. Earls even initially identified himself as David Furhman when approached in Boquete by law enforcement. And, David Fuhrman identified Earls as the man depicted in the Indiana state identification card photograph. As Earls' brother-in-law, there is no doubt Fuhrman had personal familiarity with Earls. In light of the overwhelming evidence in this case, it is reasonable to conclude that the outcome of this trial did not turn on the testimony of the Deputy Marshal and Special Agent. Therefore, we find the admission of the lay witness identification testimony of Deputy Marshal Loesch and Special Agent Hammond to be harmless error.

**C. Cross-Reference in Sentencing Guideline § 2L2.2(c)**

Earls' final contention on appeal is that his sentence should be vacated because the district court erroneously calculated his Sentencing Guideline range through a cross-reference contained in § 2L2.2(c)(1)(A). We review the legal interpretation of a section of the Guidelines *de novo*. *United States v. Zamora*, 320 F.3d 704, 708 (7th Cir. 2003).

Based on Earls' three-count conviction of making a false statement on a passport application, aggravated identity theft, and knowingly transferring a stolen identification document, Earls' PSR recommended that his total offense level be set at fifteen. The PSR originally calculated Earls' base level offense to be eight, but increased his offense level to fifteen through the application of a cross-reference listed in Sentencing Guidelines § 2L2.2(c)(1)(A). The PSR concluded that because Earls had used a passport in the commission of a felony, namely bail jumping, the court should apply § 2L2.2(c)(1)(A). Section 2L2.2(c)(1)(A) directs that "[i]f the defendant used a passport or visa in the commission or attempted commission of a felony offense, other than an offense involving violation of immigration laws, apply § 2X1.1 (Attempt, Solicitation, or Conspiracy) in respect to that felony offense." U.S.S.G. § 2L2.2 (c)(1)(A) (2010). In turn, § 2X1.1 of the Sentencing Guidelines then directs the court to apply "[t]he base level from the guideline for the substantive offense, plus any adjustments from such guideline for any intended offense conduct that can be established with reasonable certainty." U.S.S.G.

§ 2X1.1(a) (2010). Here, the district court determined by a preponderance of the evidence that Earls used his passport to commit the state court felony offense of bail jumping. Pursuant to Wisconsin Criminal Code 946.49(1), "Whoever, having been released from custody under chapter 969, intentionally fails to comply with the terms of his or her bond" commits a Class H felony if the person is charged with a felony. The district court concluded that this offense most closely correlates to Sentencing Guideline § 2J1.6 (Failure to Appear by Defendant) and therefore applied that Guideline, thereby bringing the offense level to fifteen.

Earls argues that the cross-reference was done in error based upon the commentary language contained in Application Note 2 to § 2X1.1. Application Note 2 defines "substantive offense" to mean "the offense that the defendant was *convicted* of soliciting, attempting, or conspiring to commit." U.S.S.G. § 2X1.1 cmt. n.2 (2010). Earls, therefore, contends that the district court erred when it applied § 2X1.1 because at the time Earls was sentenced, he had not been actually *convicted* for failure to appear in Wisconsin state court, the underlying offense at issue here. In turn, Earls contends that there is therefore no "substantive offense" for purposes of § 2X1.1, and as a result, no basis for the cross-reference. Earls argues that absent the application of the cross-reference contained in § 2L2.2(c)(1)(A), his base offense level would have remained at level eight, which carried a recommended sentencing range of zero to six months.

As Earls concedes, his position is contrary to precedents from other jurisdictions. *See United States v. O'Flanagan*,

339 F.3d 1229, 1233 (10th Cir. 2003); *United States v. Drew,* 200 F.3d 781, 879 (D.C. Cir. 2000); *United States v. Branch*, 91 F.3d 699, 742-42 (5th Cir. 1996); *United States v. Smith*, 997 F.2d 396, 397 (8th Cir. 1993). The Tenth Circuit effectively addressed the issue of whether the commentary contained in Application Note 2 to § 2X1.1 applies when the Guideline is reached by cross-reference in *United States v. O'Flanagan*, 339 F.3d 1229, 1233 (10th Cir. 2003). In that case, O'Flanagan argued that his sentence was illegally enhanced by the district court's cross-reference from U.S.S.G. § 2K2.1(c)(1)(A) to § 2X1.1, which he argues, resulted in an improper use of § 2B3.1(a) (robbery Guideline) to calculate his sentence. *Id*. at 1231. O'Flanagan contended that the district court should not have used the robbery Guideline to calculate a higher offense level because he had not been convicted of robbery. *Id*. Ultimately, the Court concluded that § 2X1.1, when cross-referenced by § 2K2.1(c), does not require a conviction before a district court may apply the use of the Guideline provision applicable to the conduct underlying offense. *Id*. at 1234. The Court further noted their conclusion was confirmed by the express intent of the Sentencing Commission, the uniformity of persuasive authorities, the purpose of the Sentencing Guidelines, and the context in which § 2X1.1 is used. *Id*.

We agree with our sister circuits. We find that the commentary of Application Note 2 does not apply when § 2X1.1 is reached by cross-reference from § 2L2.2(c)(1)(A). When § 2X1.1 is applied directly, the note clarifies that the Guideline is directing the district court to begin with the Guideline of the substantive offense underlying

the conspiracy conviction. However, when § 2X1.1 is reached by cross-reference, it rare that a defendant will have already been convicted of "soliciting, attempt, or conspiring to commit" an underlying offense at the time of sentencing. Therefore, we conclude that the commentary in Application Note 2 was logically intended to be applied when § 2X1.1 is applied directly, not when it is reached through cross-reference from § 2L2.2(c)(1)(A).

As a result, we find that the district court did not err in its calculation of Earls' offense level.

### III. CONCLUSION

For the foregoing reasons, we AFFIRM the judgment of the district court.