In the

# United States Court of Appeals

## For the Seventh Circuit

No. 13-3161

UNITED STATES OF AMERICA,

*Plaintiff-Appellee,*

*v.*

JUSTIN J. HARPER, also known as
JUSTIN G,

*Defendant-Appellant.*

Appeal from the United States District Court for the
Southern District of Illinois.
No. 3:12-cr-30300-GPM-1 — **G. Patrick Murphy**, *Judge.*

ARGUED APRIL 25, 2014 — DECIDED SEPTEMBER 9, 2014

Before KANNE AND ROVNER, *Circuit Judges*, and DOW,
*District Judge.*[*]

ROVNER, *Circuit Judge.* On October 5, 2011, Justin J. Harper
was arrested, pursuant to a warrant for a violation of his

---

[*] The Honorable Robert M. Dow, Jr., of the Northern District of Illinois,
sitting by designation.

parole, in the back house of a two-house property which was referred to as a trap house—or drug house. Harper and his girlfriend were located in the rear bedroom of that house, where the agents also recovered a loaded 9mm semi-automatic pistol on the floor under the nightstand and a large piece of suspected cocaine base on top of that nightstand. Fingerprint analysis subsequently revealed Harper's fingerprints on the magazine of that weapon. In the closet of the bedroom, the agents discovered another large amount of suspected cocaine base. The search of other areas of the house, including clothes and secret compartments yielded a Glock .40 caliber semi-automatic pistol loaded with a large capacity magazine, numerous rounds of ammunition, many clear plastic bags of controlled substances, a digital scale, and $368 in U.S. currency. Laboratory analysis identified the controlled substances seized from the residence as including 148.6 grams of heroin, 105.4 grams of cocaine base, 1 gram of marijuana, and 10 capsules of an unknown substance.

Harper maintained that he resided at the front house with his aunt and used the back house only when he had women visiting. He claimed that two other individuals lived in the rear house and were responsible for the drugs, and that they were staying elsewhere when the agents arrived with the warrant that morning.

Ultimately, Harper pled guilty to one count of felon in possession of a weapon in violation of 18 U.S.C. § 922(g)(1). The Presentence Report (PSR) initially determined a base offense level of 14 for the firearms offense but, applying the enhancement in U.S.S.G. § 2K2.1(c), the district court also considered evidence of a drug offense and calculated the

proper offense level as 26. The district court sentenced Harper to a term of imprisonment of 100 months and three years of supervised release. Harper now appeals his sentence.

In sentencing Harper, the district court adopted the guideline calculation in the PSR and applied § 2K2.1, which applies to offenses involving unlawful receipt, possession or transportation of firearms or ammunition and to prohibited transactions involving firearms or ammunition. That section includes a cross reference, which provides that "[i]f the defendant used or possessed any firearm … in connection with the commission or attempted commission of another offense, … apply [U.S.S.G.] § 2X1.1 (Attempt, Solicitation, or Conspiracy) in respect to that other offense, if the resulting offense level is greater than that determined above… ." U.S.S.G. § 2K2.1(c)(1)(A). The district court held that Harper possessed the firearm in connection with the commission of the offense of distribution of a controlled substance, based on the drugs found in the residence in proximity to Harper and the firearm and on the testimony presented at the sentencing hearing regarding Harper's sales of such controlled substances. Because the Sentencing Guidelines calculations under § 2X1.1 resulted in a higher offense level, pursuant to § 2K2.2(c)(1)(A) the district court utilized that higher level. See *United States v. Howard*, 729 F.3d 655, 664 (7th Cir. 2013) ("[t]he guideline for unlawful possession of a firearm instructs the court to use the offense level for another offense in the guideline calculation … if the defendant possessed the firearm during the other offense and the offense level for the other crime would be greater.")

In a sentencing challenge, we review factual determinations underlying the application of the Sentencing Guidelines for

clear error. *United States v. Anobah*, 734 F.3d 733, 736 (7th Cir. 2013). We have recognized that the sentencing judge is in the best position to determine the credibility of witnesses at the sentencing hearing, and will not disturb the credibility determination unless it is without foundation. *United States v. White*, 519 F.3d 342, 348 (7th Cir. 2008). Legal interpretations of Guidelines, however, are reviewed *de novo. See United States v. Earls*, 704 F.3d 466, 473 (7th Cir. 2012).

Harper contends that the application of § 2K2.1 was improper because the district court lacked reliable evidence of any connection between the firearms offense and any drug offense. In addition, he argues that the district court failed to make findings regarding the drug quantity, that the offense does not fall within the conspiracy or attempt language of § 2X1.1, and that the use of that provision violated his rights under the Fifth and Sixth Amendments. We consider these arguments in turn.

Harper contends that the district court applied the cross reference in § 2K2.1(c) based solely upon its finding that drugs and guns are always related. He asserts that there was no reliable evidence connecting the firearms possession to a drug offense, and therefore the court improperly applied that cross reference. In holding that Harper possessed the firearm in connection with a drug offense, the district court relied upon the evidence found at the time of the execution of the search at the residence and the testimony of Special Agent Stephen M. Kirkpatrick at the sentencing hearing. The search of the residence established that Harper was in close physical proximity to controlled substances, some of which were in plain view. The firearm which Harper admitted possessing was

on the floor under the nightstand next to the bed, and a large piece of cocaine base was on top of that nightstand. A substantial amount of cocaine base was also found in the closet of that bedroom. In addition to that evidence, however, the district court also was presented with testimony by Special Agent Kirkpatrick. He testified that on August 22, 2012, he interviewed a friend of Harper, Travis Garner, who provided information regarding Harper's drug distribution activities. Garner stated that he was physically present in the rear house with Harper on the night before Harper was arrested, and he saw Harper selling cocaine base to two or three people that night. He further averred that Harper showed him three ounces of heroin and two ounces of cocaine base that evening. Garner told Kirkpatrick that when he was at the house that night, he saw a firearm near the bed on the floor and cocaine base in the closet of that bedroom. Harper was able to cross-examine Kirkpatrick and he argued to the district court that it should not credit the testimony particularly given the length of time that had passed from the arrest to that statement. The district court recognized those issues, but ultimately concluded that the statement was reliable because the details provided by Garner were corroborated by the agents' observations during the search. The description by Garner as to the location of the firearm and the cocaine base, as well as the type and amount of drugs present in the house that night, matched what the agents observed hours later on the morning of the search.

A district court may rely on hearsay in sentencing even if it would not have been admissible at trial, as long as that hearsay is deemed reliable. *United States v. Johnson*, 489 F.3d 794, 796–97 (7th Cir. 2007); *United States v. Isom*, 635 F.3d 904, 908 (7th Cir.

2011) (courts may rely even on double hearsay as long as those statements are reliable.) The district court determined that the statement was reliable because the details of the statement were corroborated by the agents' observations, and that determination is well within the province of the district court. *See id.* ("[r]eliability can be established by internal consistency, corroborating evidence, and providing missing facts and details"). The district court therefore properly considered that evidence in determining whether the firearms offense was connected to a drug offense, and that effectively dooms Harper's challenge here. The statement by Garner as recounted by Kirkpatrick indicates that Harper was selling drugs from that residence the night before the arrest, and that a firearm was visible on the floor of the bedroom at the time of those transactions. Harper pled guilty to possession of a firearm found in that same area the next morning.

Although Harper argues that the drug offense cannot be considered relevant conduct, that argument is without support once Garner's statement is credited because the firearm was present during the drug offense. The Application Note to § 2K2.1 makes clear that the presence of a firearm in the course of a drug transaction is sufficient under this provision. Section 2K2.1(c)(1)(A) applies "in the case of a drug trafficking offense in which a firearm is found in close proximity to drugs, drug-manufacturing materials, or drug paraphernalia" and provides that "[i]n these cases, application of … (c)(1) is warranted because the presence of the firearm has the potential of facilitating … another offense." Numerous cases have recognized that connection as well, holding that "'[t]he seizure of a firearm in close proximity to illegal drugs is considered

powerful support for the inference that the firearm was used in connection with the drug trafficking operation.'" *United States v. Meece*, 580 F.3d 616, 621 (7th Cir. 2009), *quoting United States v. Markovitch*, 442 F.3d 1029, 1032 (7th Cir. 2006); *see also United States v. Alcantar*, 733 F.3d 143, 147 (5th Cir. 2013).

Harper also argues, briefly, that the district court failed to make an explicit finding of the drug amount. That is belied by the record, because the court adopted the findings in the Presentence Report (PSR) which calculated the drug quantity by attributing to Harper two ounces of cocaine base and three ounces of heroin. Harper contends that the PSR contradicts itself because it notes that according to the government no credible evidence exists to determine the amount of drugs attributable to the defendant. That sentence, however, must be read in context in the PSR. There may have been insufficient evidence to determine whether Harper possessed all of the 148.6 grams of heroin and 105.4 grams of cocaine base discovered in the residence; therefore, the PSR explicitly utilized only the drug quantities that Harper physically possessed and was offering for sale the night before his arrest, according to Garner's statement which the district court deemed reliable – two ounces of cocaine base and three ounces of heroin. That is a sufficient basis for the drug quantity determination in the PSR, which was accepted by the district court.

The remaining challenges by Harper have no support in the law. He asserts that § 2X1.1 is inapplicable because the court did not determine that an "attempt" or "conspiracy" took place. Harper fails to provide any support for such a requirement, which presumably he bases on the title of § 2X1.1— "Attempt, Solicitation, or Conspiracy." Section 2X1.1 is

referenced by § 2K2.1, which applies to firearms offenses, and § 2K2.1 is not limited to attempts or conspiracies. In fact, by its own terms, § 2K2.1 directs reference to § 2X1.1 if the firearm is used in connection with the "*commission or* attempted commission of another offense." [emphasis added] Therefore, by its plain language its application is not limited to attempts or conspiracies. In *Earls*, we addressed a similar challenge in which the defendant argued that Application Note 2 of § 2X1.1 defined "substantive offense" as the offense a defendant was convicted of soliciting, attempting or conspiring to commit. 704 F.3d at 474. Earls argued that under that definition the cross reference in § 2K2.1 applied only to other offense *convictions*. *Id.* We held that the commentary of Application Note 2 did not apply when § 2X1.1 is reached by cross reference from § 2K2.1, as such a note was "logically intended to be applied when 2X1.1 is applied directly, not when it is reached through cross reference" in § 2K2.1. *Id.* Similarly, the reference to attempts or conspiracy are applicable when reached directly but not here on cross reference because it is inconsistent with the language in § 2K2.1. The district court properly utilized the § 2X1.1 cross reference in calculating the offense level.

Finally, Harper briefly argues that § 2K2.1 itself is inherently violative of the Fifth and Sixth Amendments because it directs the court to seek out a higher offense level than the one applicable to the offense conduct itself. Harper states that the Supreme Court in *McMillan v. Pennsylvania*, 477 U.S. 79, 88 (1986), was critical of cases in which the sentence factor outweighs the charged offense conduct and cautioned against permitting a sentence enhancement to be the "tail which wags the dog." Rather than argue as to the impact in his particular

case, however, Harper asserts a general facial challenge to the § 2K2.1(c) enhancement itself, asserting that it is intrinsically faulty in that by instructing the court to seek out higher offense levels it effectively ensures that the sentencing factor is the "tail which wags the dog." Harper presents no support for this sweeping argument. He cites to caselaw holding that an increase in the applicable penalty for a crime is an element that must be submitted to a jury and found beyond a reasonable doubt, but this enhancement does not increase the statutory penalty applicable to the offense so that caselaw is irrelevant. Nor is the Guidelines provision arbitrary. The Sentencing Commission could properly determine that the possession of a firearm by a felon in the context of another offense such as drug trafficking is inherently more dangerous than mere possession absent such activity, and that such a pairing elevates the danger of such firearm being actually used. Accordingly, the Sentencing Commission could properly determine that a higher offense level is warranted in such a circumstance. The requirement that the district court employ the higher offense level in calculating the Guidelines range reflects that recognition, but the district court of course has the discretion to impose whatever sentence it determines to be appropriate in consideration of the factors set forth in 18 U.S.C. § 3553(a). Harper has failed to present any cogent argument that this provision is violative of the Fifth or Sixth Amendments.

That said, numerous courts and the Sentencing Commission itself have recognized the potential for § 2K2.1 to sweep within its reach wide-ranging offenses that may be connected only tenuously. Firearms may be possessed over a long period of

time and that raises the potential for the use of a felon-in-possession conviction as an anchor to reach all kinds of other conduct through that enhancement provision. Courts have long recognized the potential for abuse, and many have limited that reach by holding that other offenses must fall within relevant conduct in order to trigger the § 2K2.1(c) enhancement. *See, e.g., United States v. Jones,* 313 F.3d 1019, 1022–23 (7th Cir. 2002); *United States v. Kulick,* 629 F.3d 165, 169 (3rd Cir. 2010) and cases cited therein. The Sentencing Commission also has addressed that concern in an amendment effective November 1, 2014, which eliminates the incorporation of offenses that involved a firearm other than the firearm used in the offense of conviction, and clarifies that courts must consider the relationship between the offense of conviction and the other offense consistent with relevant conduct principles. U.S.S.G. § 2K2.1 Proposed Application Note 14(E), effective November 1, 2014. The limitations of the relevant conduct consideration will protect against some of the feared abuse. Those legitimate concerns with overreaching, however, are simply not present here because the firearm offense involved the possession of a weapon that was also in the defendant's possession hours earlier in the course of drug sales, and clearly falls within the scope of relevant conduct. Harper therefore has raised no meritorious challenge to his sentence.

The decision of the district court is AFFIRMED.